[Cite as *State v. Price*, 2013-Ohio-3984.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
### LOGAN COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,                  CASE NO. 8-13-03

    v.

ROBERT PRICE,                          O P I N I O N

    DEFENDANT-APPELLANT.

---

Appeal from Logan County Common Pleas Court
Trial Court No. CR12-03-78

**Judgment Affirmed**

Date of Decision: September 16, 2013

---

APPEARANCES:

    *Daniel L. Bennett* **for Appellant**

    *William T. Goslee* **for Appellee**

**PRESTON, P.J.**

{¶1} Defendant-appellant, Robert J. Price, appeals the Logan County Court of Common Pleas' judgment entry of conviction. We affirm.

{¶2} On March 27, 2012, the Logan County Grand Jury indicted Price on three counts of trafficking crack cocaine in violation of R.C. 2925.03(A)(1), fifth degree felonies. (Doc. No. 2).

{¶3} On April 2, 2012, Price was arraigned and entered pleas of not guilty. (Doc. No. 10).

{¶4} On October 16, 2012, the State moved to dismiss Counts One and Two of the indictment, which the trial court granted. (Doc. No. 54). The case continued on Count Three of tracking in crack cocaine.

{¶5} On December 11, 2012, a jury found Price guilty. (Doc. Nos. 73, 77).

{¶6} On January 28, 2013, the trial court sentenced Price to 12 months imprisonment and ordered Price to serve the sentence consecutive to his sentence in Logan County Case No. CR12-08-0200. (Jan. 28, 2013 Tr. at 8-9).

{¶7} On February 6, 2013, the trial court filed a judgment entry of sentence indicating that the court sentenced Price to 12 months imprisonment, *concurrent* with his sentence in case no. CR12-08-0200. (Doc. No. 80).

{¶8} On February 14, 2013, the trial court filed a nunc pro tunc judgment entry of sentence indicating that the court sentenced Price to 12 months

imprisonment, *consecutive* to his sentence in case no. CR12-08-0200. (Doc. No. 89).

{¶9} On March 7, 2013, Price filed a notice of appeal. (Doc. No. 94). Price now appeals, raising the following assignment of error:

**Assignment of Error**

**Appellant's conviction for trafficking in drugs was against the manifest weight of the evidence presented at trial.**

{¶10} In his sole assignment of error, Price argues that his conviction was against the manifest weight of the evidence because the confidential informant was using heroin at the time she allegedly made the purchase of crack cocaine for the sheriff's department, and she has a history of lying to the police.

{¶11} In determining whether a conviction is against the manifest weight of the evidence, a reviewing court must examine the entire record, "'[weigh] the evidence and all reasonable inferences, consider the credibility of witnesses and [determine] whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997), quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983). A reviewing court must, however, allow the trier of fact appropriate discretion on matters relating to the weight of the evidence and the credibility of the witnesses. *State v. DeHass*, 10 Ohio St.2d 230, 231 (1967).

{¶12} Stormi Kiser testified that she is currently residing in the West Central Rehabilitation Center in Marysville, Ohio following an obstruction of justice conviction stemming from her involvement with three juveniles escaping from the Juvenile Detention Center. (Dec. 11, 2012 Tr. at 43). Kiser admitted that she initially lied to police about the escape incident, but later told the police the truth and pled guilty. (*Id.* at 43, 45, 65). Kiser testified that the escape incident occurred after she helped police in this case. (*Id.* at 43, 45). Kiser testified she has a 2007 Kansas drug conviction, and she was involved in the Logan County (Ohio) drug culture in the past. (*Id.* at 43-44). She also testified that she pled guilty to a charge related to her misuse of her grandmother's credit card. (*Id.* at 64-65).

{¶13} Kiser testified that, after she obtained a drug charge in 2007, Detective LeVan asked her to work with him, but she said no at that time. (*Id.* at 45). Kiser testified that she later decided to work with LeVan, so she told LeVan that she could buy crack cocaine from Price, who she has known for a few years as "R-P." (*Id.* at 46-47). Thereafter, LeVan came to Kiser's house to discuss making a controlled drug buy, and she called Price to purchase drugs. (*Id.* at 47). Kiser testified that Price agreed to sell her crack cocaine at a store called "Fulmer's," so LeVan drove her near the location after checking to make sure her pants and coat

-4-

pockets were empty, concealing a tape recorder on her, and giving her $20 to pay for the drugs. (*Id.* at 48-49, 51).

{¶14} Kiser testified that, before LeVan dropped her off near the drug-buy location, she called Price to ask him where he wanted to meet her. (*Id.* at 49). Kiser identified State's exhibit one as a recording of the phone call she made to Price setting up the drug buy, which was played for the jury. (*Id.* at 49-51). Kiser also identified State's exhibit two as a recording of the conversation she had with Price during the controlled drug buy in front of Fulmer's on January 11, 2012, which was played for the jury. (*Id.* at 60). Kiser identified the male voice on the recording to be Price's. (*Id.* at 63). Kiser testified that, during the drug buy, Price indicated that the crack was "fire," meaning it was "top of the line." (*Id.*). Kiser testified that Price gave her $20 worth of crack inside a Budweiser cap, which Kiser identified as State's exhibit 3. (*Id.* at 52-53). Kiser testified that, when she returned to LeVan's vehicle, she gave LeVan the beer cap with the crack cocaine in it, which Price sold her. (*Id.*).

{¶15} Kiser testified that, around the time of the drug buy, she was a heroin user, but she has not been using it since August 10th (2012). (*Id.* at 62). When asked why she wanted to work with Detective LeVan, Kiser testified that she was trying to burn bridges with drug dealers, so she could help herself and the community. (*Id.* at 64). Kiser testified that she was paid $50 for her help. (*Id.*).

{¶16} On cross-examination, Kiser testified that she has worked with LeVan on other drug buys besides in this case. (*Id.* at 65). Kiser testified that she was familiar with the search protocol for controlled drug buys, and LeVan does not pat her down, check her bra, underwear, or socks prior to the drug buy. (*Id.* at 66). Kiser testified that Price put the crack into the bottle cap and squeezed the cap closed around the crack. (*Id.* at 68). Kiser testified that she was a heroin addict at the time of the drug buy, but money was never an issue for her. (*Id.* at 70). Kiser admitted that stealing was part of her life, which was dishonest. (*Id.* at 72). Kiser testified that LeVan gave her $50 to purchase $20 worth of drugs. (*Id.* at 76). She testified that she has tried crack before, but she was not experienced with it. (*Id.*). Kiser testified that she did not expect leniency on any pending charges for her participation in this case. (*Id.* at 78-79). On re-direct, Kiser testified that she is not biased against Price and has no reason to lie about him. (*Id.* at 80). Kiser testified that Price usually drinks Budweiser and, "every time I've see[n] him, he's got a six pack of Budweiser bottles." (*Id.* at 81). Kiser testified that she was not using heroin during the drug buy, but she probably used heroin the night before. (*Id.* at 81-82).

{¶17} Kevin LeVan testified that, in January 2012, he was a detective for the Logan County Sheriff's Office, and had been so employed for 31.5 years, though he is currently retired. (*Id.* at 85). LeVan identified State's exhibit two as

a recording of a controlled buy. In a controlled drug buy, law enforcement set up the buy but do not make any arrests and instead, record the transaction and present it to a grand jury, according to LeVan. (*Id.* at 86). LeVan testified that a "bust-buy," on the other hand, occurs when the defendant is arrested immediately after the drug sale. (*Id.* at 87). LeVan testified that they did not do a "bust-buy" to protect the informant's identity so they can use the informant for multiple drug buys. (*Id.*).

{¶18} LeVan testified that Kiser contacted him and wanted to know if he wanted to make a controlled buy of crack cocaine from Price. (*Id.* at 88). LeVan testified that he agreed, picked Kiser up, concealed two digital recorders on her, made the recorded phone call to Price, and gave Kiser $20 for the buy. (*Id.* at 88). LeVan also testified that he had Kiser empty her pockets before the buy. (*Id.* at 88-89). LeVan testified that, after he dropped Kiser off, he sat stationary in the vehicle and, using his binoculars, observed a male walking around the west end of the shopping center complex from the Red Bud Apartments to meet up with Kiser. (*Id.* at 89). LeVan testified that the suspect was a black male in a hoodie about LeVan's size, maybe a little huskier, but generally the height of the defendant. (*Id.* at 90). LeVan testified that Price lived in the Red Bud Apartments. (*Id.*). LeVan testified that he has spoken with Price in person and over the phone, and the voice on the recordings sounds like Price. (*Id.* at 92). LeVan testified that

Kiser handed him the crack cocaine from the buy, which was inside of a bent up Budweiser beer bottle cap. (*Id.*). LeVan testified that he gave Kiser $50 for the purchase she made, and the suspected drug was sent to BCI & I for testing. (*Id.* at 92-93).

{¶19} On cross-examination, LeVan testified that he observed what appeared to be a male subject approach Kiser, though he could not say for sure the suspect was male "unless [he] undressed him." (*Id.* at 97). LeVan testified that he did not see Kiser the whole time she walked back to the vehicle because he was moving the vehicle, so Kiser could have put something into her pocket without him seeing it. (*Id.* at 98). He testified that, prior to the controlled drug buy, he did not check Kiser's back pockets or her undergarments, but he did check Kiser's coat. (*Id.* at 99). LeVan testified that he was not aware that Kiser was using heroin around the time of the controlled buy. (*Id.* at 102).

{¶20} On re-direct, LeVan testified that he had no reason to believe that Kiser had the crack cocaine on her person prior to the controlled buy. (*Id.* at 104). He further testified that the voice on the recordings is a male voice. (*Id.*). LeVan testified that $20 worth of crack cocaine was about a quarter of the size of a pencil eraser, and the phrase "that's fire shit," used by the male subject on the recording of the controlled buy, meant that the crack cocaine was "[t]op of the line stuff, good stuff." (*Id.* at 105). LeVan testified that Kiser did not appear to be under the

influence of drugs during the controlled buy, and he would not have used her if he thought she was under the influence. (*Id.*).

**{¶21}** Detective Phil Bailey testified that he received the evidence from LeVan, and submitted it to BCI & I for testing. (*Id.* at 108-109). Bailey identified State's exhibit four as the Logan County Sheriff's Office evidence sheet, where Detective LeVan indicated that he had evidence in the case. (*Id.* at 108). Bailey identified State's exhibit five as the crime lab submission sheet generated from BCI & I when he personally delivered the evidence to BCI & I for testing. (*Id.* at 108-109). Bailey identified State's exhibit seven as the report prepared by Mr. Worst, a forensic scientist at BCI & I, wherein Worst identified the submitted substance as crack cocaine. (*Id.* at 110).

**{¶22}** Thereafter State's exhibits one through three were admitted without objection, and State's exhibits four through seven were admitted by stipulation of the parties. (*Id.* at 113). The State rested, and Price motioned for acquittal pursuant to Crim.R. 29(A), which the trial court denied. (*Id.* at 114-115). Thereafter, the defense rested, and Price renewed the motion for acquittal. (*Id.* at 119-120). The jury found price guilty. (*Id.* at 150); (Doc. No. 73).

**{¶23}** Price essentially argues that his conviction is against the manifest weight of the evidence because the confidential informant was not credible due to her past drug use and convictions. Credibility, however, is primarily the role of

the jury, and we cannot find that the jury lost its way in this case. *DeHass*, 10 Ohio St.2d at 231. The evidence was not limited to the confidential informant's testimony, alone. The jury heard recordings of a phone conversation between the drug dealer and Kiser setting up the purchase. (State's Ex. 1). The jury also heard a recording of the controlled drug buy in which the drug dealer informs Kiser about the high quality of the drug he is selling. (State's Ex. 2). Kiser returned with crack cocaine inside of a Budweiser beer bottle cap, which was significant since Price was known to prefer that name brand of beer. Both Kiser and Detective LeVan testified that the voice of the suspect on the recordings was similar to Price's voice, and the drug dealer was seen leaving the area where Price was known to live to conduct the drug sale. Detective LeVan also testified that the suspect, who he observed through binoculars from his parked vehicle while the drug buy was in progress, was a black subject who was about the same build as Price.

{¶24} The jury was aware of Kiser's past drug activity and criminal convictions and still found her credible. In light of the evidence presented that Price sold Kiser crack cocaine, we are not persuaded that the jury clearly lost its way and created a manifest injustice here.

{¶25} Price's assignment of error is, therefore, overruled.

{¶26} Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**ROGERS and SHAW, J.J., concur.**

**/jlr**