[Cite as *State v. Fisher*, 2014-Ohio-436.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## HARDIN COUNTY

STATE OF OHIO,

   PLAINTIFF-APPELLEE,                     CASE NO. 6-13-03

  v.

DANIEL LEWIS FISHER,                 **O P I N I O N**

   DEFENDANT-APPELLANT.

Appeal from Hardin County Common Pleas Court
Trial Court No. 20122051 CRI

**Judgment Affirmed**

**Date of Decision: February 10, 2014**

APPEARANCES:

   *Michael J. Short* for Appellant.

   *Destiny R. Hudson* for Appellee.

**PRESTON, J.**

{¶1} Defendant-appellant, Daniel Lewis Fisher, appeals the Hardin County Court of Common Pleas' judgment entry of conviction. We affirm.

{¶2} On March 1, 2012, the Hardin County Grand Jury indicted Fisher on Count One of aggravated trafficking in drugs in violation of R.C. 2925.03(A)(1), (C)(1)(a), a fourth-degree felony; Counts Two and Three of aggravated possession of drugs in violation of R.C. 2925.11(A), (C)(1)(a), fifth-degree felonies; and, Count Four of possession of criminal tools in violation of R.C. 2923.24(A), a fifth-degree felony. (Doc. No. 1).

{¶3} On May 21, 2012, Fisher was arraigned and entered pleas of not guilty to all counts in the indictment. (Doc. No. 5).

{¶4} On June 4, 2013, the matter proceeded to a jury trial, and the jury found Fisher guilty on all counts. (Doc. Nos. 37-41).

{¶5} On July 29, 2013, the trial court held a sentencing hearing wherein it found that Count Two was an allied offense to Count One. (JE, Doc. No. 50); (July 29, 2013 Tr. at 16). The State elected to sentence on Count One. (*Id.*); (*Id.*). The trial court sentenced Fisher to two years community control on each of Counts One, Three, and Four and further ordered Fisher serve his community control concurrently. (*Id.*); (*Id.* at 16-23). The trial court filed its judgment entry of sentence on August 1, 2013. (Doc. No. 50).

{¶6} On August 2, 2013, Fisher filed a notice of appeal, and now raises one assignment of error. (Doc. No. 52).

**Assignment of Error**

**The conviction was against the manifest weight of the evidence.**

{¶7} In his sole assignment of error, Fisher argues that his aggravated trafficking and aggravated possession convictions are against the manifest weight of the evidence. With respect to the aggravated trafficking conviction, Fisher argues that the State's sole witness, a confidential informant ("CI"), was not a credible witness because of his admitted lack of memory concerning the details of the transaction. With respect to the aggravated possession charge, Fisher argues that he did not knowingly possess a controlled substance, because he believed the substance was jewelry cleaner.[1]

{¶8} In determining whether a conviction is against the manifest weight of the evidence, a reviewing court must examine the entire record, "'[weigh] the evidence and all reasonable inferences, [consider] the credibility of witnesses and [determine] whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997), quoting *State v. Martin*, 20 Ohio App.3d 172, 175

---

[1] Although Fisher states that his criminal tools conviction was also against the manifest weight of the evidence, he does not provide any argument relative to that conviction, and we decline to make an argument for him on appeal. App.R. 12(A)(2); App.R. 16(A)(7).

(1st Dist.1983). A reviewing court must, however, allow the trier of fact appropriate discretion on matters relating to the weight of the evidence and the credibility of the witnesses. *State v. DeHass*, 10 Ohio St.2d 230, 231 (1967).

{¶9} The criminal offense of aggravated drug trafficking is codified in R.C. 2925.03, which provides, in relevant part: "[n]o person shall knowingly * * * [s]ell or offer to sell a controlled substance or a controlled substance analog * * *." R.C. 2925.03(A)(1). The criminal offense of aggravated possession of drugs is codified in R.C. 2925.11, which provides, in pertinent part: "[n]o person shall knowingly obtain, possess, or use a controlled substance or a controlled substance analog." R.C. 2925.11(A). The indictment alleged that Fisher trafficked and possessed Pentedrone, with a chemical structure substantially similar to Methcathinone, a.k.a. Bath Salts and Jewelry Cleaner, a Schedule I controlled substance. (Doc. No. 1). R.C. 3719.41, 3719.43; 21 U.S.C. 812; 21 C.F.R. 1308.11(f)(5). (*See also* June 4, 2013 Tr. at 121).

{¶10} Fisher argues that the CI's testimony was not credible because the CI could not remember certain details concerning the drug transaction, and, at trial, the CI could not remember Fisher's name. While the CI did testify that he did not know the defendant's name—or at least the defendant's last name—at the time he entered the store, he identified the drug dealer as "Danny Fisher" in a statement he made a few minutes after the controlled buy. (Tr. at 131, 135-136, 145). At trial, the CI identified Fisher as the person that sold him the bath salts on December 1,

2011. (*Id.* at 137). While the CI could not remember whether he received a receipt or whether Fisher deposited the money into the cash register, the CI testified that he gave everything he received during the controlled buy to law enforcement. (*Id.* at 138-140). The CI did recall that, when he entered the store to make the purchase, he asked the defendant for "bath salts," and the defendant never questioned the nature of the substance he was selling to him. (*Id.* at 141-142). Based on the aforementioned, the jury did not clearly lose its way and create a manifest miscarriage of justice. The CI testified almost a year and a half after the controlled drug buy occurred and forgot some of the details concerning the controlled drug buy; nevertheless, the CI identified Fisher immediately after the controlled buy and at trial.

{¶11} Next, Fisher argues that his trafficking conviction is against the manifest weight of the evidence because the only evidence demonstrating he sold the bath salts was the CI's less-than-credible testimony. In particular, Fisher argues that the audio recording from the CI's concealed wire was of very poor quality and not played for the jury. (*See id.* at 153-155). While it is true that the audio recording was of very poor quality, there was circumstantial evidence of the drug transaction offered through the testimony of Detective Beach, who conducted the controlled buy. Prior to conducting the controlled buy, Detective Beach searched the CI for money and contraband and found none; thereafter, Detective Beach gave the CI $100 to make the controlled purchase, and he watched the CI

enter and exit the store in question. (*Id.* at 150-155). When the CI returned to Detective Beach a few minutes later, he came back with a white powdery substance later identified as bath salts and no money. (*Id.* at 157); (State's Ex. 3). Detective Beach also testified that law enforcement discovered four of the five twenty dollar bills he provided the CI in the cash register at the store in question. (*Id.* at 163-164). Consequently, we are not convinced that Fisher's aggravated trafficking conviction is against the manifest weight of the evidence for this reason.

{¶12} Finally, in a singular sentence in his brief, Fisher argues that his aggravated possession conviction was against the manifest weight of the evidence because he thought the substance was jewelry cleaner, and therefore, he did not knowingly possess the illegal bath salts. We disagree.

{¶13} "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22(B). The CI testified that, when he entered the store, he asked Fisher for "bath salts," and Fisher never disputed the nature of the substance. (June 4, 2013 Tr. at 141-142). Detective Beach testified that the bath salts were in a clear, unmarked plastic baggie, and criminals refer to bath salts as jewelry cleaner. (*Id.* at 157-158). Detective Rushing, who executed a search of the store in question, testified that he did not find any commercially labeled bath salts or jewelry cleaner in the store. (*Id.* at 182). Detective Beach testified that

commercially-labeled bath salts are in marked packaging and sell for much less than $100. (*Id.* at 167). From this evidence, the jury could have reasonably concluded that Fisher *knowingly* possessed illegal bath salts.

{¶14} Fisher's assignment of error is, therefore, overruled.

{¶15} Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**ROGERS, and SHAW, J.J., concur.**

**/hlo**