[Cite as *State v. Bachman*, 2018-Ohio-1242.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
FULTON COUNTY

| | |
|---|---|
| State of Ohio | Court of Appeals No. F-17-006 |
| Appellee | Trial Court No. 16CR000120 |
| v. | |
| Mitchel D. Bachman | **DECISION AND JUDGMENT** |
| Appellant | Decided: March 30, 2018 |

* * * * *

Scott A. Haselman, Fulton County Prosecuting Attorney, for appellee.

Edward J. Stechschulte, for appellant.

* * * * *

**JENSEN, J.**

## I. Introduction

{¶ 1} Appellant, Mitchel Bachman, appeals the judgment of the Fulton County Court of Common Pleas, sentencing him to one year of community control after a jury found him guilty of trafficking in marijuana and permitting drug abuse.

## A. Facts and Procedural Background

{¶ 2} On August 16, 2016, appellant was indicted on one count of trafficking in marijuana in violation of R.C. 2925.03(A), and one count of permitting drug abuse in violation of R.C. 2925.13(A), felonies of the fifth degree. Appellant entered a plea of not guilty, and a two-day jury trial began on January 12, 2017. The following facts were established at trial.

{¶ 3} On June 17, 2016, a confidential informant, J.B., contacted the Fulton County Sheriff's Office and informed deputy Steven Waxler about a potential drug transaction involving appellant. According to J.B., appellant had offered to sell him 1.5 ounces of marijuana for $425. Thereafter, Waxler and another deputy, Justin Galbraith, met J.B. at the Fulton County Health Center. Waxler searched J.B. and his car for drugs, money, or other contraband, and installed an audio/video recorder inside the pocket of J.B.'s mesh shorts. The recording of the transaction, which was of a poor quality, was played at trial.

{¶ 4} J.B. then made his way to the Ace Hardware parking lot in Wauseon, Ohio, where he was expecting to meet with appellant to complete the transaction. Waxler and Galbraith followed appellant to Ace Hardware.

{¶ 5} While waiting in the Ace Hardware parking lot, J.B. received a call from appellant, who informed J.B. that the marijuana was at a friend's mobile home located at Star Mobile Park. Appellant indicated that he was having a difficult time locating the marijuana after having hidden it inside the trailer. Consequently, J.B. drove to the mobile home to complete the transaction.

2.

{¶ 6} After J.B. parked his vehicle, the deputies lost sight of him. J.B. made his way into the trailer, where appellant and two other males were waiting. According to J.B., the two unidentified males did not participate in the drug transaction. Upon entering the trailer, J.B. offered appellant $400 in exchange for the marijuana. Appellant agreed, and the transaction was completed.

{¶ 7} Approximately five minutes later, J.B. returned to his vehicle and left the trailer park. Shortly thereafter, an individual whom Waxler identified as appellant departed the scene driving a red pickup truck. Notably, J.B. testified that appellant had driven a bright red Ford Ranger pickup truck for "a year or two" prior to the transaction. Waxler recorded the license plate number from the truck, which was later determined to be registered to appellant's mother.

{¶ 8} Eventually, J.B. met up with Waxler and Galbraith, as well as Officer Jerry Brown. The video and audio recording equipment was removed from J.B.'s person, and J.B. handed the officers the vegetation that he had purchased from appellant, which was subsequently analyzed and confirmed to be marijuana.

{¶ 9} Following the state's presentation of the foregoing evidence, appellant moved for a directed verdict pursuant to Crim.R. 29 as to the charge of permitting drug abuse. The trial court subsequently denied appellant's motion, and the defense rested without calling any witnesses. Following deliberations, the jury found appellant guilty of the aforementioned charges. The trial court ordered the preparation of a presentence investigation report and continued the matter for sentencing.

3.

{¶ 10} At sentencing, the trial court ordered appellant to serve six months in prison on the trafficking charge and eight months on the charge for permitting drug abuse, to be served concurrently. The court found, pursuant to R.C. 2929.13(B), that a non-prison sentence was appropriate. Consequently, the court imposed a one-year term of community control, ordered appellant to serve 30 days in jail, and directed appellant to pay restitution in the amount of $400. Appellant's timely notice of appeal followed.

## B. Assignments of Error

{¶ 11} On appeal, appellant presents the following assignments of error:

Assignment of Error No. 1: The jury's verdict finding Appellant guilty of trafficking in drugs was against the manifest weight of the evidence.

Assignment of Error No. 2: Appellant's conviction for permitting drug abuse was not supported by sufficient evidence to prove beyond a reasonable doubt each and every element of the crime charged.

Assignment of Error No. 3: The jury's verdict finding Appellant guilty of permitting drug abuse was against the manifest weight of the evidence.

## II. Analysis

## A. Standard of Review

{¶ 12} In appellant's assignments of error, he challenges the sufficiency of the state's evidence as to the charge of permitting drug abuse and asserts that the jury's findings of guilt as to both offenses was against the manifest weight of the evidence.

4.

{¶ 13} In reviewing a challenge to the sufficiency of the evidence, we view the evidence in a light most favorable to the prosecution and determine whether "any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." (Internal citations omitted.) *State v. Smith*, 80 Ohio St.3d 89, 113, 684 N.E.2d 668 (1997). In making that determination, the appellate court will not weigh the evidence or assess the credibility of the witnesses. *State v. Were*, 118 Ohio St.3d 448, 2008-Ohio-2762, 890 N.E.2d 263, ¶ 132. Whether there is sufficient evidence to support a conviction is a question of law. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997).

{¶ 14} When reviewing a manifest weight of the evidence issue, we sit as a "thirteenth juror." *Id.* at 387. That is, we review the entire record, weigh the evidence and all reasonable inferences, and consider the credibility of witnesses. *Id.* Our role is to determine "whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Id.* We reverse a conviction on manifest weight grounds for only the most "exceptional case in which the evidence weighs heavily against the conviction." *Id.* at 387.

**B. Trafficking in Marijuana**

{¶ 15} In his first assignment of error, appellant argues that the jury's guilty verdict as to the charge for trafficking in marijuana under R.C. 2925.03(A) was against the manifest weight of the evidence.

5.

{¶ 16} R.C. 2925.03(A)(1) prohibits a person from selling or offering to sell a controlled substance or a controlled substance analog. Appellant does not contest the fact that marijuana is a controlled substance. Rather, he contends that the state failed to establish that he knowingly sold marijuana to J.B.

{¶ 17} In support of his manifest weight argument, appellant takes issue with the state's reliance upon J.B.'s testimony in establishing the facts of the drug transaction. Appellant insists that J.B. was not a credible witness in light of his admission that he is a drug addict and the fact that he was eventually terminated as a confidential informant after violating the terms of the confidential informant agreement and being convicted on a felony theft charge. Moreover, appellant questions why the state failed to elicit testimony from the two individuals who were inside the trailer at the time the transaction took place, failed to recover the text messages between J.B. and appellant that supposedly contain appellant's offer to sell the marijuana to J.B., and failed to search the mobile home in which the drug transaction took place. In addition, appellant highlights the poor quality of the recording that was taken by J.B. during the drug transaction, and asserts that "it is next to impossible to say with any sense of assurances that Mr. Bachman is captured on the video. But it is undisputed that the video does not capture the purported drug transaction."

{¶ 18} We note at the outset that appellant's trial counsel thoroughly explored the various credibility issues relating to J.B. The jury was able to assess J.B.'s credibility in light of his drug addiction and previous bad acts, and concluded that J.B. was a credible

6.

witness. We do not find that the jury's credibility determination was against the manifest weight of the evidence. *See State v. Neal*, 5th Dist. Stark No. 1998CA00288, 1999 Ohio App. LEXIS 2863, *5-6 (June 21, 1999) (rejecting defendant's manifest weight argument challenging the credibility of identification testimony based upon the witness's credibility upon a determination that defense counsel thoroughly cross-examined the witness and explored the credibility issue at trial).

{¶ 19} Further, although J.B. was the only eyewitness to the drug transaction that testified at trial, we note that the testimony of the officers substantiated J.B.'s assertion that appellant sold him 1.5 ounces of marijuana for $400. Indeed, the officers testified at length as to the procedures they employed to ensure that J.B. was not in possession of any drugs prior to the transaction, which included searching J.B. and his vehicle. Upon exiting the trailer, the officers met up with J.B., who informed them that appellant sold him the marijuana, which he presented to the officers. J.B. also informed the officers that appellant had left the premises in his red pickup truck. Appellant acknowledges that each of the law enforcement officers involved in this case testified that an individual left the mobile home park in a red Ford pickup truck matching the one driven by appellant shortly after the drug transaction took place.

{¶ 20} During his testimony, officer Waxler identified appellant as the driver of the red pickup truck and stated that he observed appellant driving the vehicle as it passed "within a few feet" in front of him. Waxler was able to record the license plate number on the truck, which was registered to appellant's mother.

7.

{¶ 21} Appellant challenges Waxler's identification of appellant, noting that Waxler prepared an incident report three days after the transaction in which he omitted any mention of having observed appellant driving the red pickup truck. This apparent inconsistency was explained by Waxler at trial. Waxler testified that he does not prepare his incident reports by including every detail but, rather, only includes the information he deems necessary in order to allow him to recollect the events described in the report. The jury was in the best position to assess the credibility of this explanation and we see no reason to question the jury's determination in this case.

{¶ 22} In light of the evidence introduced by the state at trial, we find that the jury did not lose its way and create such a manifest miscarriage of justice that the trafficking conviction must be reversed and a new trial ordered. Accordingly, appellant's first assignment of error is not well-taken.

## C. Permitting Drug Abuse

{¶ 23} In his second assignment of error, appellant argues that the state introduced insufficient evidence to support his conviction for permitting drug abuse under R.C. 2925.13(A), which provides: "No person who is the owner, operator, or person in charge of a * * * vehicle, as defined in division (A) of section 4501.01 of the Revised Code, shall knowingly permit the vehicle to be used for the commission of a felony drug abuse offense."

{¶ 24} Here, appellant asserts that the state failed to produce any evidence on the use element of R.C. 2925.13(A); that is, the state did not establish that appellant used the

8.

pickup truck in order to traffic the marijuana.  The state responds to this argument by asserting that appellant's reading of the statute is too narrow.  Referring to several dictionary definitions of the words found in the statute, the state contends that the relevant question is, "Was appellant's red pick-up truck put into service with the object or purpose of committing a felony drug abuse offense?"  The state insists that the answer to this question is yes.

{¶ 25} In support of its assertion, the state cites the Ninth District's decision in *State v. Thompson*, 9th Dist. Lorain No. 3836, 1985 Ohio App. LEXIS 8658 (Aug. 28, 1985).  In *Thompson*, the court of appeals found that the defendant's conviction for permitting drug abuse was supported by sufficient evidence where the defendant drove his 17-year-old stepdaughter, Rebecca, to a motel to have sex with her after offering her whiskey, marijuana, and cocaine.  In its decision, the Ninth District stated:

> The statute does not, as Thompson believes, require that the felony
> drug abuse offense take place inside the vehicle, in this case Thompson's
> 1972 Oldsmobile Toronado.  The statute only requires that the vehicle be
> used for the commission of such an offense.  In this case, the Toronado was
> used to transport Thompson, the drugs and his intended victim to the motel
> where he intended to consummate his criminal act.  Without the use of the
> Toronado or another vehicle, Thompson, the cocaine and Rebecca would
> not have been delivered to the scene of the crime.  The Toronado was thus

9.

an integral and necessary instrument in Thompson's criminal scheme, and was clearly "…used for the commission of a felony drug abuse offense." R.C. 2925.13(A). *Id*. at *7.

{¶ 26} In light of this language, the state argues that the use of a vehicle, even if only to transport the defendant to the scene of a drug transaction, is sufficient to support a conviction for permitting drug abuse. We find that this reading of *Thompson* is too broad.

{¶ 27} Having examined *Thompson*, we conclude that the defendant's use of the vehicle to transport the drugs (and the victim) was a crucial fact that is lacking in the present case. The evidence introduced at trial reveals that the marijuana that was sold to J.B. was located inside appellant's friend's mobile home during the entire course of the drug transaction. There is no evidence that appellant transported the marijuana to the site of the drug transaction. Therefore, we find *Thompson* to be distinguishable. Appellant's pickup truck was incidental to the commission of the drug offense and was not an "integral and necessary instrument" in this case. Therefore, we hold that appellant's conviction for permitting drug abuse was not supported by sufficient evidence and must be reversed.

{¶ 28} Accordingly, appellant's second assignment of error is well-taken. Because we have concluded that appellant's conviction for permitting drug abuse was not supported by sufficient evidence, we need not address his third assignment of error, in which he argues that the conviction was against the manifest weight of the evidence.

10.

### III.  Conclusion

**{¶ 29}** In light of the foregoing, the judgment of the Fulton County Court of Common Pleas is affirmed as to appellant's conviction for trafficking in marijuana, and reversed and vacated as to his conviction for permitting drug abuse.  The parties are ordered to divide the costs of this appeal equally pursuant to App.R. 24.

Judgment affirmed, in part,
and reversed, in part.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.

_____
JUDGE

James D. Jensen, P.J.

Christine E. Mayle, P.J.
CONCUR.

_____
JUDGE

_____
JUDGE