[Cite as *State v. Burns*, 2025-Ohio-5442.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
HIGHLAND COUNTY


STATE OF OHIO,                          :

    Plaintiff-Appellee,            : CASE NO. 25CA7

    v.                             :

CHRISTOPHER A. BURNS,                    : DECISION AND JUDGMENT ENTRY

    Defendant-Appellant.           :

_____

APPEARANCES:

Steven H. Eckstein, Washington Court House, Ohio, for appellant[1].

Anneka P. Collins, Highland County Prosecuting Attorney, and
Adam J. King, Assistant Prosecuting Attorney, Hillsboro, Ohio,
for appellee.
_____
CRIMINAL APPEAL FROM COMMON PLEAS COURT
DATE JOURNALIZED:11-25-25
ABELE, J.

{¶1} This is an appeal from a Highland County Common Pleas Court judgment of conviction and sentence. Christopher Burns, defendant below and appellant herein, raises one assignment of error for review:

> "DEFENDANT-APPELLANT'S CONVICTION IS AGAINST
> THE MANIFEST WEIGHT OF THE EVIDENCE."

---

[1] Different counsel represented appellant during the trial court proceedings.

{¶2} A Highland County Grand Jury returned an indictment that charged appellant with (1) one count of aggravated trafficking in methamphetamine in violation of R.C. 2925.03(A)(1), and (2) one count of aggravated possession of methamphetamine in violation of R.C. 2925.11(A), both third-degree felonies. Appellant entered not guilty pleas.

{¶3} At appellant's February 24, 2025 jury trial, Robert Gibson testified that in 2024 he offered to work undercover for the Highland County Task Force to "work off charges." On June 29, 2024, Gibson set up a meeting with codefendant Joey Fender. After officers searched him, they dropped Gibson near Fender's home with money to buy narcotics. At Fender's home, Gibson found Fender and appellant. Fender "asked someone to get the scales," and to "get [her] dope." Appellant "handed her [Joey Fender] the dope. But he didn't - - well, he didn't buy nothing from me. He just gave her hers and she bought it from me. It was Joey. I handed her the money and everything." After Joey weighed the drugs, she gave the methamphetamine to Gibson, who "tied it up . . . and left and met the dude across the way there at the - - the car, and give it to [the officer]." Gibson explained that officers searched him again and interviewed him after the drug deal. Gibson testified that law enforcement paid him $200 and because he thought he "was under

indictment," he decided to work with the Task Force to avoid further trouble.

{¶4} Appellant's codefendant Joey Fender testified that she had a recent conviction for trafficking in methamphetamine, had not yet been sentenced, and law enforcement gave her "consideration" in her case for her cooperation in appellant's case.  Fender explained that Robert Gibson visited her house on June 24, 2024 "to purchase two 8-balls" [methamphetamine] for $120.  When Gibson arrived, appellant, a friend and neighbor who frequently visits her home was present.  When Gibson arrived, he "asked me did I have the stuff.  And he said, 'where's the stuff at?'."  Fender explained that the methamphetamine "was on my dresser," and she asked "C-Bow [appellant] to hand it to me."  When asked if appellant handed the narcotics to her, Fender initially said, "I'm not sure."  Fender explained that she is unsure whether appellant handed her the scales or the methamphetamine, but later agreed that, if appellant handed her something before he handed her the scales, that would have been the methamphetamine.  Fender also acknowledged that she regularly sold narcotics and that appellant frequently assisted.  When asked directly, "on June 29th of '24, did you knowingly sell meth to Bobby Gibson," Fender replied, "Yes."  When asked, "on June 29th of 2024, did the Defendant help you by handing you the meth and the scales," Fender replied, "Yes."

{¶5} Highland County Drug Task Force Investigator Justin Brewer testified that he has assisted with hundreds of covert drug operations over the past three years by serving as a Confidential Informant (CI) handler and conducting surveillance. Brewer, familiar with the drug trade language, explained that an "8-ball" is 3.5 grams of methamphetamine.

{¶6} On June 29, 2024, Investigator Brewer assisted with the controlled drug buy that involved appellant. Brewer drove Gibson to the area where Joey Fender lived, and once Gibson exited the vehicle, Brewer stayed in the area and to conduct surveillance. Brewer explained that Task Force agents maintain a conference call and at least one officer watches a live video feed as the transaction occurs and agents instruct one another when the transaction is completed. In the present case, Detective Butler watched the live feed and Brewer stayed on a conference call during the transaction. After the deal's completion, Brewer picked up Gibson and "immediately took possession of the narcotics that he purchased." Brewer recognized the narcotics as methamphetamine and placed it in the evidence locker at the Highland County Sheriff's Office. Ohio Bureau of Criminal Investigation Forensic Scientist Pamela Farley testified that the tested substance contained 5.9 grams of methamphetamine.

{¶7} Hillsboro Police Detective Brian Butler testified that

he is assigned to the Highland County Drug Task Force and has

assisted with thousands of covert drug operations where the Task

Force coordinates with confidential informants:

> They'll sign them up, brief them, ask them who they can
> buy drugs off of, and we will supervise them. We will
> provide them with the money, the audio recorder, and
> follow them to the person that either we say, hey, who
> - who can you buy off of, or we tell them somebody who
> is a known drug dealer. Can you buy off of them? And
> they get a hold of them. It happens one of two ways.
> We supervise them at the going and meeting with this
> person in various locations. And monitoring the deal
> visually and through audio recorder. After the deal or
> the transaction is complete, we meet with the
> confidential informant and recover the narcotics and the
> audio/video recorder. And then we have a brief and
> interview the confidential informant afterwards.

**{¶8}** Detective Butler explained that a "ball" is "an 8-ball

or an eighth of an ounce of . . . methamphetamine." Butler

further explained that the task force pays confidential

informants for their work and after a drug deal with a

confidential informant, the task force does not immediately

arrest the suspect because it would reveal the confidential

informant's identity. Butler added that before each deal they

either photograph or record the serial numbers of the buy money.

**{¶9}** Detective Butler worked with Confidential Informant

Gibson on June 29, 2024. Gibson advised the task force that he

could purchase methamphetamine from Joey Fender because Gibson

had already visited Gibson's home and made arrangements "to

purchase two 8-balls of methamphetamine which would equal 3.5

grams a piece, 7 grams total, for $120." The task force met with Gibson, searched him, and "gave Bobby $120 of recorded cash money." Investigator Brewer provided Gibson with the audio/video recorder and drove Gibson to the area of Fender's home while Butler followed and viewed the audio/video recorder through a live feed on his phone. After Brewer dropped off Gibson, Gibson entered Fender's home and spoke with Fender and appellant. Butler then searched Gibson after the encounter. The Task Force intended to purchase 7 grams of methamphetamine, but the narcotics weighed less than 7 grams and Butler said he had experienced dealers shorting buyers. Butler added that BCI does not test baggies for fingerprints and that Gibson's fingerprints would have been on the bag as well because Gibson did not wear gloves. Butler explained that officers obtained a $200 informant payment cash voucher for Gibson and a $120 cash expenditure voucher to document the money used to purchase the illegal narcotics.

{¶10} Appellee played the video for the jury and Butler testified that in the video he could see the CI, Joey Fender and appellant "all handling the bags." Butler narrated the video:

> I see Bobby Gibson. He goes into the house. He makes contact with Joey Fender and Chris Burns. Bobby Gibson said he wanted two 8-balls. Joey Fender said it's right there. At which point, Chris Burns reaches over toward the dresser area. He hands Joey two items. One seemed like it was a little baggie in his right hand. The other one was like a pouch, like a dark-colored pouch. Hands

them to Joey.

Joey walks on the other side of the bed, and turns around the corner. She starts that - talking about scales. And she said, "There they are, C-Bow, right there," referring to Chris Burns.

Chris Burns goes over to the dresser area again. Under some clothes, I believe, you can see him with the scales in his hands and hands them in Joey's direction.

Later, you see Joey with the same dark-colored pouch pulling the methamphetamine in and out of it. And from this baggie that she gives part of it to Bobby Gibson.

Then Bobby Gibson leaves and meets up with Investigator Brewer.

{¶11} At the close of appellee's evidence, the trial court overruled appellant's Crim.R. 29 motion for judgment of acquittal.

{¶12} On February 25, 2025, the jury found appellant guilty of (1) aggravated trafficking in methamphetamine in violation of R.C. 2925.03(A)(1), and (2) aggravated possession of methamphetamine in violation of R.C. 2925.03(A)(1), both in an amount equal to or exceeding bulk amount but less than five times bulk amount.

{¶13} The trial court held a sentencing hearing immediately after the trial and sentenced appellant to: (1) serve a definite determinate 24-month prison term, (2) optional postrelease control, and (3) pay $120 in restitution (joint and several with codefendant Joey Fender). This appeal followed.

I.

{¶14} In his sole assignment of error, appellant asserts that his conviction is against the manifest weight of the evidence.

{¶15} A court may conclude that the judgment is against the weight of the evidence. *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997). "The question to be answered when a manifest weight issue is raised is whether 'there is substantial evidence upon which a jury could reasonably conclude that all the elements have been proved beyond a reasonable doubt.' " *State v. Leonard*, 2004-Ohio-6235, ¶ 81, quoting *State v. Getsy*, 84 Ohio St.3d 180, 193–194 (1998), citing *State v. Eley*, 56 Ohio St.2d 169 (1978), syllabus. A court that considers a manifest weight challenge must " 'review the entire record, weigh the evidence and all reasonable inferences, and consider the credibility of witnesses.' " *State v. Beasley*, 2018-Ohio-493, ¶ 208, quoting *State v. McKelton*, 2016-Ohio-5735, ¶ 328. However, the reviewing court must bear in mind that credibility generally is an issue for the trier of fact to resolve. *State v. Issa*, 93 Ohio St.3d 49, 67 (2001); *State v. Murphy*, 2008-Ohio-1744, ¶ 31 (4th Dist.). " 'Because the trier of fact sees and hears the witnesses and is particularly competent to decide "whether, and to what extent, to credit the testimony of particular

witnesses," we must afford substantial deference to its determinations of credibility.' "  *Barberton v. Jenney*, 2010-Ohio-2420, ¶ 20, quoting *State v. Konya*, 2006-Ohio-6312, ¶ 6 (2d Dist.), quoting *State v. Lawson*, 1997 WL 476684 (2d Dist. Aug. 22, 1997).

**{¶16}** Thus, an appellate court will generally defer to the trier of fact on issues of evidence weight and credibility, as long as a rational basis exists in the record for the fact-finder's determination.  *State v. Picklesimer*, 2012-Ohio-1282, ¶ 24 (4th Dist.); *accord State v. Howard*, 2007-Ohio-6331, ¶ 6 (4th Dist.) ("We will not intercede as long as the trier of fact has some factual and rational basis for its determination of credibility and weight.").  Accordingly, if the prosecution presented substantial credible evidence upon which the trier of fact reasonably could conclude, beyond a reasonable doubt, that the essential elements of the offense had been established, the judgment of conviction is not against the manifest weight of the evidence.  *Accord Eastley v. Volkman*, 2012-Ohio-2179, ¶ 12, quoting *Thompkins*, 78 Ohio St.3d at 387, quoting Black's Law Dictionary 1594 (6th Ed.1990) (a judgment is not against the manifest weight of the evidence when " ' "the greater amount of credible evidence" ' " supports it).

**{¶17}** Consequently, when an appellate court reviews a manifest weight of the evidence claim, the court may reverse a

judgment of conviction only if it appears that the fact-finder, when it resolved the conflicts in evidence, " 'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.' " *Thompkins*, 78 Ohio St.3d at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist. 1983); *accord McKelton* at ¶ 328. Finally, a reviewing court should find a conviction against the manifest weight of the evidence only in the " 'exceptional case in which the evidence weighs heavily against the conviction.' " *Thompkins*, 78 Ohio St.3d at 387, quoting *Martin*, 20 Ohio App.3d at 175; *accord State v. Clinton*, 2017-Ohio-9423, ¶ 166; *State v. Lindsey*, 87 Ohio St.3d 479, 483 (2000).

{¶18} In the case sub judice, appellant contends that his aggravated trafficking conviction is against the manifest weight of the evidence because (1) two of the five witnesses, the informant and co-defendant, "stood to gain from their testimony, which fact impeaches their credibility to the point where it is useless," and (2) the two officers could not identify the substance appellant took from Fender's dresser. Appellee, however, argues that (1) direct and circumstantial evidence supports appellant's convictions, (2) a conviction may rest in whole or in part on the uncorroborated testimony of a co-defendant or accomplice if the jury finds it credible, and (3) a confidential informant's testimony is not per se unreliable.

**{¶19}** R.C. 2925.03(A)(2) defines trafficking in methamphetamine:

(A) No person shall knowingly do any of the following:

(1) Sell or offer to sell a controlled substance or a controlled substance analog.

**{¶20}** Appellant argues that his conviction is against the manifest weight of the evidence, primarily because his conviction is based on a confidential informant's testimony. However, a confidential informant's testimony and credibility are generally matters for the trier of fact to weigh and determine, and the trier of fact is free to accept or reject any and all of the evidence. *State v. Smith*, 2011-Ohio-997, ¶ 20 (3d Dist.), citing *Thompkins*, 78 Ohio St.3d at 387.

**{¶21}** In *State v. Anderson*, 2018-Ohio-2013 (4th Dist.), this court considered whether Anderson's charges were against the manifest weight of the evidence when Anderson asserted that a confidential informant with a criminal history, financial incentive, and incentive to mitigate punishment for his own drug offense, lacked credibility. We observed:

> [T]his court and others generally have rejected manifest-weight challenges based upon a confidential informant's alleged lack of credibility. *State v. Stevens*, 4th Dist. Highland No. 09CA3, 2009-Ohio-6143, 2009 WL 4021149, ¶ 25; *accord State v. Bachman*, 6th Dist. Fulton No. F-17-006, 2018-Ohio-1242, 2018 WL 1567641; *State v. Bradley*, 2015-Ohio-5421, 55 N.E.3d 580 (8th Dist.), ¶¶ 26-28; *State v. Fisher*, 3rd Dist. Hardin No. 6-13-03, 2014-Ohio-436, 2014 WL 538642, ¶¶ 10-11; *State v. Altman*, 7th Dist. Columbiana No. 12 CO 42, 2013-Ohio-

5883, 2013 WL 6921497, ¶¶ 33-37; *State v. Price*, 3rd Dist. Logan No. 8-13-03, 2013-Ohio-3984, 2013 WL 5230326, ¶ 24; *State v. Smith*, 193 Ohio App.3d 201, 2011-Ohio-997, 951 N.E.2d 469 (3rd Dist.), ¶ 20; *State v. Moore*, 5th Dist. Stark No. 2008-CA-00228, 2009-Ohio-4958, 2009 WL 3003996, ¶ 23. In *Bachman*, for instance, the court concluded that the defendant's trafficking charge was not against manifest weight of the evidence, even though the defendant asserted that the confidential informant's testimony lacked credibility due to the informant's "drug addiction and previous bad acts." *Id.* at ¶ 18. The court pointed out that the defendant's "trial counsel thoroughly explored the various credibility issues relating to" the confidential informant. The court noted that the jury was aware of the informant's credibility issues and was entitled to weigh it accordingly. The court did not believe "that the jury's credibility determination was against the manifest weight of the evidence." *Id.*, citing *State v. Neal*, 5th Dist. Stark No. 1998CA00288, 1999 WL 744148, *2-3, 1999 Ohio App. LEXIS 2863, *5-6 (June 21, 1999) (rejecting defendant's manifest weight argument challenging the credibility of identification testimony based upon the witness's credibility upon a determination that defense counsel thoroughly cross-examined the witness and explored the credibility issue at trial.

*Id.* at ¶ 41.

**{¶22}** In *Anderson,* we observed that, in *Bachman, supra,* the court also observed that the officers who monitored the informant's controlled buy with the defendant substantiated the informant's testimony. "The officers testified at length as to the procedures they employ to ensure that [the informant] was not in possession of any drugs prior to the transaction, which included searching [the informant] and his vehicle." *Id.* at ¶ 19. Further, in *Bachman* and in the case subjudice, after the

informant's contact with the defendant, the officers rendezvoused with the informant who advised the officers that the defendant sold him narcotics and gave the officers the narcotics. *Anderson* at ¶ 42.

**{¶23}** Moreover, other Ohio courts have rejected similar manifest-weight challenges based upon a confidential informant's alleged lack of credibility. In *State v. Jefferson,* 2021-Ohio-281, (3d Dist.), the defendant argued that the confidential informant not a credible witness because he testified in exchange for case consideration and had a motive to ensure defendant's conviction. The court, however, held:

> "[T]he jury is not precluded from relying on a witness's testimony simply because the witness has a criminal history or a motivation to provide testimony favorable to the prosecution." *State v. Smith*, 3d Dist. Seneca No. 13-19-26, 2020-Ohio-427, ¶ 44, citing *State v. Nitsche*, 8th Dist. Cuyahoga No. 103174, 2016-Ohio-3170, ¶ 44. "Instead, a witness's criminal history, prior drug use, or potential bias are factors that the jury may consider in determining whether to credit the witness's testimony and in assigning weight to the witness's testimony." *Id.*, citing *State v. Price*, 3d Dist. Logan No. 8-13-03, 2013-Ohio-3984, ¶ 23-24. Here, the jury was informed of the agreement between the confidential informant and law enforcement officers, specifically that he assisted law enforcement in his capacity as a confidential informant in exchange for case consideration for his pending drug-related charges. *See State v. Kammeyer*, 3d Dist. Seneca No. 13-19-48, 2020-Ohio-3842, ¶ 51. Accordingly, we cannot conclude that the jury clearly lost its way and created a manifest injustice by finding the confidential informant's testimony credible. *See State v. Cartlidge*, 3d Dist. Seneca No. 13-19-44, 2020-Ohio-3615, ¶ 26 ("In the end, a '[m]ere disagreement over the credibility of witnesses is not a sufficient reason to reverse a judgment on manifest weight grounds.' "), quoting *State*

*v. Cervantes*, 10th Dist. Franklin No. 18AP-505, 2019-Ohio-1373, ¶ 28.

*Jefferson* at ¶ 36.

{¶24} In the case sub judice, appellant's trial counsel thoroughly cross-examined co-defendant Fender and confidential informant Gibson about their criminal records and incentives to testify.  The jury heard testimony that Fender awaited sentencing in her case and that Gibson received compensation and an opportunity to avoid criminal charges.  *See Anderson* at ¶ 43 (jury heard ample testimony about the confidential informant's criminal history and did not lose its way when it credited the informant's testimony and rejected the defendant's testimony).  Here, the jury sitting as the trier of fact was "free to believe or disbelieve any or all of the testimony the confidential informant "presented" at trial.  *State v. Crump*, 2010-Ohio-5263, ¶ 26 (10th Dist.).

{¶25} In addition, appellant argues that the officers who testified could not specifically identify the substance appellant retrieved from Fender's dresser from the video and these alleged weaknesses in appellee's case left "only the videotape and the BCI&I testing and report to prove the above elements."  As appellee points out, however, direct and circumstantial evidence including the testimony of five witnesses and eight exhibits supported appellant's convictions.

**{¶26}** We observe that all courts have concluded that a defendant may be convicted solely on the basis of circumstantial evidence. *State v. Nicely*, 39 Ohio St.3d 147, 151 (1988); *State v. Anderson*, 2018-Ohio-2013, ¶ 40 (4th Dist.). "Circumstantial evidence and direct evidence inherently possess the same probating value." *State v. Jenks*, paragraph one of the syllabus. "Circumstantial evidence is defined as '[t]estimony not based on actual personal knowledge or observation of the facts in controversy, but of other facts from which deductions are drawn, showing indirectly the facts sought ot be proved. . .'" *Nicely*, 39 Ohio St.3d at 150, quoting Black's Law Dictionary (5 Ed.1979) 221. Thus, a lack of direct evidence is not dispositive of a manifest-weight challenge. *State v. Bradford*, 2017-Ohio-8481, ¶ 13 (8th Dist.); *Anderson* at ¶ 40.

**{¶27}** Importantly, in the case at bar appellee played a video recording of the transaction for the jury that showed during the controlled buy appellant retrieve the scales and handle the methamphetamine in coordination with codefendant Fender. Although appellant contends that the video does not show what exactly appellant handed to Fender, in *Anderson*, *supra,* 2018-Ohio-2013, we noted that while we recognized that none of the video or audio evidence crystalized the moment the defendant handed drugs to the confidential informant in exchange

for money, the evidence did record the informant and the defendant engaged in conversations that trained law enforcement officers testified constituted drug transactions.  *Id.* at ¶ 45. Moreover, we noted that direct evidence of a hand-to-hand drug transaction is not necessarily required to sustain a drug-trafficking conviction.  *Id.*, citing *State v. Chafin*, 2017-Ohio-7622, ¶ 36-38 (4th Dist.)(rejecting similar argument that drug-trafficking conviction against manifest weight of the evidence when video failed to document hand-to-hand drug transaction); *State v. McLemore*, 2000 WL 422368, *2 (9th Dist.)(defendant's conviction not against the manifest weight of the evidence even though officers who observed controlled buy did not see what transpired between appellant and informant, and even though defendant asserted that informant lacked credibility because she cooperated with police in exchange for the dismissal of criminal charges against her).

{¶28} As noted above, in the case sub judice, the co-defendant and confidential informant's testimony are substantially consistent and two officers corroborated their testimony and provided photos and the video surveillance. Therefore, like *Anderson*, even if none of the video or documentary evidence clearly shows that appellant exchanged drugs for money, Gibson and Fender's testimony, along with the

officer's corroborating observations, provides ample competent credible evidence to establish beyond a reasonable doubt, that appellant committed the offense aggravated drug trafficking. *Anderson* at ¶ 45.

{¶29} Accordingly, based upon the foregoing reasons, we overrule appellant's assignment of error and affirm the trial court's judgment.

JUDGMENT AFFIRMED.

JUDGMENT ENTRY

It is ordered that the judgment be affirmed.  Appellee shall recover of appellant the costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Highland County Common Pleas Court to carry this judgment into execution.

If a stay of execution of sentence and release upon bail has been previously granted by the trial court or this court, it is temporarily continued for a period not to exceed 60 days upon the bail previously posted.  The purpose of a continued stay is to allow appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of the proceedings in that court.  If a stay is continued by this entry, it will terminate at the earlier of the expiration of the 60-day period, or the failure of the appellant to file a notice of appeal with the Supreme Court of Ohio in the 45-day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio.  Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of 60 days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Hess, J. & Wilkin, J.: Concur in Judgment & Opinion

For the Court

BY:_____
                Peter B. Abele, Judge

NOTICE TO COUNSEL

Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.