[Cite as *State v. Altman*, 2013-Ohio-5883.]

STATE OF OHIO, COLUMBIANA COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO, | ) | |
| | ) | CASE NO. 12 CO 42 |
| PLAINTIFF-APPELLEE, | ) | |
| | ) | |
| - VS - | ) | OPINION |
| | ) | |
| RUSTY ALTMAN, | ) | |
| | ) | |
| DEFENDANT-APPELLANT. | ) | |


CHARACTER OF PROCEEDINGS:     Criminal Appeal from Common Pleas
                              Court, Case No. 11 CR 49.


JUDGMENT:                     Affirmed.


APPEARANCES:
For Plaintiff-Appellee:        Attorney Robert L. Herron
                               Prosecuting Attorney
                               Attorney John Gamble
                               Asst. Prosecuting Attorney
                               105 S. Market Street
                               Lisbon, OH  44432


For Defendant-Appellant:       Attorney Douglas King
                               91 W. Taggart Street
                               P.O. Box 85
                               East Palestine OH  44413


JUDGES:
Hon. Mary DeGenaro
Hon. Gene Donofrio
Hon. Cheryl L. Waite


                                              Dated:  December 30, 2013

DeGenaro, P.J.

{¶1} Defendant-appellant, Rusty Altman appeals the decision of the Columbiana County Court of Common Pleas, convicting him of drug trafficking and sentencing him accordingly. Altman argues his conviction was based on improper use of character and/or prior bad act evidence. Also, Altman contends that his conviction was against the manifest weight of the evidence. Finally, Altman asserts that he received ineffective assistance of counsel.

{¶2} Upon review, all of Altman's assignments of error are meritless. Use of prior acts evidence was not plain error as the evidence was not offered to establish that Altman was acting in conformity with those acts. The decision of the trial court was not against the manifest weight of the evidence. Finally, defense counsel's failure to object to the prior acts evidence, or to comments made by the prosecutor during closing statements, does not render the representation constitutionally ineffective. As such, the judgment of the trial court is affirmed.

## Facts and Procedural History

{¶3} On February 24, 2011, Altman was charged by secret indictment with one count of drug trafficking (R.C. 2925.03(A)(1)), a fifth-degree felony, for knowingly selling or offering to sell a Schedule V controlled substance, buprenorphine. The indictment was later amended to correct for the fact that buprenorphine is a Schedule III controlled substance. A jury trial was held on August 13, 2012, in the Columbiana County Court of Common Pleas.

{¶4} The State's first witness was Detective Dan Downard of the Lisbon Police Department. Downard, director of the Columbiana County Drug Task Force since 2007, explained that a common tactic used by the Task Force is a controlled buy, where an undercover officer or a confidential informant purchases narcotics from a suspected drug dealer while being monitored by law enforcement. Downard then explained that most controlled buys are carried out through the use of confidential informants and most informants are fulfilling mandated community service hours or being paid; however, some informants volunteer based on resentment of drugs in their community. During a controlled buy, informants are outfitted with transmitting devices for their own safety, as well as for evidentiary purposes. Prior to being put in the field for a buy, the informant is

searched and their car is also searched. Also, the informant is required to hand over any money they have and they are issued money from the Task Force that is documented for evidentiary purposes.

{¶5} Downard testified that the informant used in this case was Shane Bagley, who had been a confidential informant for 15 to 18 prior controlled drug purchases. Bagley initially became an informant to satisfy community service obligations, but subsequently worked for the Task Force for monetary consideration.

{¶6} Downard explained that Bagley was used in this particular assignment because he had spent time in jail with Altman, where Altman told Bagley that he could sell him drugs, should he ever desire some. After meeting with Bagley, Downard organized a controlled purchase of drugs from Altman at his home. Downard recalled that Bagley was paid $20 to conduct the deal. Downard conceded that while some informants have lied to the Task Force in the past, he did not consider Bagley untrustworthy or under the influence of drugs.

{¶7} On February 19, the Task Force met to prepare for the purchase. Downard searched Bagley and his car. According to Downard the search took more than one minute. Bagley was given $60 to use for the purchase and was outfitted with transmitting devices, as well as a video recording device. Bagley, who was in his own car, drove to the purchase location, with Task Force vehicles driving ahead of and behind him. Bagley's recording and transmitting equipment was activated.

{¶8} During the transaction, the officers listened in on a conversation between Bagley and Altman; only the audio of the exchange was transmitted to them. Downard said he recognized Altman's voice, due to its distinctive sound. The conversation was characterized as "very to the point and dry" with Bagley purchasing four tablets of Suboxone (a brand name for buprenorphine) for $60.

{¶9} After the transaction, Bagley drove back towards the Lisbon Police Department. Once away from the residence, the convoy pulled over to turn Bagley's equipment off and take possession of the pills. Upon return to the police station, Bagley and his car were searched again. Downard then explained that the pills were processed

under standard procedure.

{¶10} Downard also identified Altman in court, based upon having been to Altman's residence in the past to assist with service of arrest warrants.

{¶11} Shane Bagley, the confidential informant, admitted that he had served two years in prison for an assault conviction. He had also been convicted in 2009 of DUI and driving under suspension, and that sentence included community service. In the past he worked as a confidential informant to satisfy community service obligations.

{¶12} Bagley met Altman while incarcerated in the county jail; while there Altman gave Bagley his phone number. Bagley later contacted Officer Downard to work as a confidential informant again, and told him he could most likely buy drugs from Altman.

{¶13} Bagley testified that he set up a meeting with Altman to purchase Suboxone at $15 per pill; received four pills from Altman for $60, and gave the pills to the Task Force. During the controlled buy, Bagley had been outfitted with a concealed recording device. Bagley testified that the audio-video recording that resulted, which was played for the jury, accurately depicted his exchange with Altman.

{¶14} On cross, Bagley explained that while he did not use drugs himself, he got to know people who were involved in the drug business based upon observing drug transactions at bars. He stated he had probably made around $300 total while working as a confidential informant for the Task Force.

{¶15} Wellsville police officer Jeffrey Weekley testified he was a member of the Task Force from 2007 to 2010, and searched Bagley's car at the station after the exchange and did not find anything. Detective Allan Young testified that after the exchange he took the pills and the recording devices off of Bagley, and that he searched Bagley at the police station while another officer searched Bagley's vehicle. On cross, Young testified that his search of Bagley took "maybe a minute at the most."

{¶16} Stephanie Laux, a drug analyst with the Ohio Bureau of Criminal Investigation, examined the pills that Bagley purchased from Altman, and identified the substance as buprenorphine (brand name Suboxone).

{¶17} At the close of the State's case, Altman moved for acquittal pursuant to

Crim.R. 29 which the trial court denied. Altman chose not to offer any evidence. The jury found Altman guilty of Trafficking in Drugs. After a sentencing hearing, the trial court imposed a twelve-month jail term, with 18 days of jail-time credit, and a discretionary post-release control term of up to three years. The trial court also ordered a three-year license suspension along with restitution.

### Prior Acts Evidence

{¶18} In his first of three assignments of error, Altman asserts:

{¶19} "The Defendant/Appellant's conviction must be reversed because it was based upon improper character evidence and/or improper evidence of prior bad acts of Defendant/Appellant."

{¶20} Altman argues that the trial court erred by permitting discussion of his prior incarcerations in the county jail during testimony and closing argument as it was a violation of Evid.R. 404. Essentially Altman argues that the State sought to use his past incarcerations to demonstrate his bad character and to show the jury he was likely to engage in criminal behavior such as the indicted offenses. To the contrary, the State argues that the testimony goes to motive, opportunity, intent, knowledge, and identity and that, therefore, admissible pursuant to Evid.R. 404(B).

{¶21} Evid.R. 404(B) provides, specifically:

Other crimes, wrongs or acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. In criminal cases, the proponent of evidence to be offered under this rule shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

{¶22} Evidentiary rulings at trial are reviewed on appeal for an abuse of

discretion. *See State v. Beshara*, 7th Dist. No. 07 MA 37, 2009-Ohio-6529, ¶55, citing *State v. Bey*, 85 Ohio St.3d 487, 490, 709 N.E.2d 484 (1999). However, Altman failed to object and has waived the issue on appeal absent plain error. Crim.R. 52(B).

**{¶23}** Plain error exists when but for the error the trial outcome would have been different. *State v. Issa*, 93 Ohio St.3d 49, 56, 752 N.E.2d 904, (2001). Plain error "is a wholly discretionary doctrine whereby the appellate court may, but need not, take notice of errors which are obvious and which affect substantial rights that are outcome determinative. * * * This elective tool is to be used with the utmost of care by the appellate court in only the most exceptional circumstances where it is necessary to avoid a manifest miscarriage of justice." (Internal citations omitted.) *State v. Jones*, 7th Dist. No. 06 MA 109, 2008-Ohio-1541, ¶65.

**{¶24}** Here, the trial court did not commit any error, let alone plain error. The evidence at issue was not used to show that Altman was acting in conformity with his prior conduct. Instead, the evidence was used to establish context regarding his prior relationships with several witnesses. The fact that Altman had been detained in the county jail in the past was only used to show how Bagley and Altman knew each other. The fact that Downard was at Altman's home previously to assist with the service of arrest warrants was offered for identification purposes; i.e., to show how Downard knew what Altman looked like. Neither of these instances uses a past act of Altman to demonstrate that he acted in conformity with past conduct. *See* Evid.R. 404(B). Moreover, even assuming arguendo there was error, the outcome of the trial would not have been different. There is overwhelming evidence of Altman's guilt, including, the audio and video recordings of the transaction, Bagley's testimony that he purchased Suboxone from Altman, and the testimony of various police officers regarding details of the exchange.

**{¶25}** Altman also raises a prosecutorial misconduct argument in his assignment of error, referencing *Washington v. Hofbauer*, 228 F.3d 689 (6th Cir.2000), a federal habeas case, for the principle that use of character or prior bad act evidence during closing argument can be an example of prosecutorial misconduct. There:

the prosecutor improperly implied that the jurors should consider [the defendant's] unseemly character when rendering their verdict; in his rebuttal, he explicitly urged them to do so. Meanwhile, he attacked [the defendant] as a 'self-serving, illogical selfish non-compassionate, no emotional interest in a family type of person,' who acted irrational due to 'drugs and alcoholism and a general not caring about other people.' The crime, he implored to the jury, '[s]ure fits him.' * * *

*Id.* at 699-700.

**{¶26}** The Sixth Circuit concluded that this character attack by the prosecutor so pervaded closing argument and rebuttal that it constituted severe prosecutorial misconduct violative of the defendant's due process rights. *Id.*

**{¶27}** By contrast, here the prosecution did not employ such tactics. The prosecutor stated the following during closing:

> You heard the detectives and Shane Bagley say to you that on the 18th Shane Bagley contacted the fellow that he met in jail just a few months earlier, the defendant Rusty Altman. He struck up a conversation with Rusty while he was - - while Mr. Bagley was doing some time for a driving drunk offense and the defendant gave him his name address and phone number. If you ever need anything, give me a call.

**{¶28}** This does not rise to the level of the prosecutorial misconduct as the reference to Altman's prior incarceration in jail was made in passing in order to establish identity and prior relationship, not to demonstrate prior bad conduct. Even assuming it was improper for the prosecutor to mention the exact nature of the offense for which Altman was serving time, Altman failed to object to the comments, and because there is ample additional evidence of guilt, we cannot say this rose to the level of plain error. *See generally State v. Carmichael*, 7th Dist. No. 11 CO 23, 2013-Ohio-2178, ¶8-14.

**{¶29}** Accordingly, for all of these reasons, Altman's first assignment of error is

meritless.

## Manifest Weight

{¶30} In his second of three assignments of error, Altman asserts:

{¶31} "The Defendant/Appellant's conviction is against the manifest weight of the evidence."

{¶32} "Weight of the evidence concerns the inclination of the *greater amount of credible evidence,* offered in a trial, to support one side of the issue rather than the other." (Emphasis sic.) *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). A conviction will only be reversed as against the manifest weight of the evidence in exceptional circumstances. *Id.* This is so because the trier of fact is in a better position to determine credibility issues, since it personally viewed the demeanor, voice inflections and gestures of the witnesses. *State v. Hill,* 75 Ohio St.3d 195, 204, 661 N.E.2d 1068 (1996); *State v. DeHass,* 10 Ohio St.2d 230, 231, 227 N.E.2d 212 (1967). On review, an appellate court must consider the entire record*,* weigh the evidence and all reasonable inferences and determine whether, in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *Thompkins* at 387.

{¶33} Altman points to perceived deficiencies in the following evidence: 1) that there was not constant visual surveillance of the controlled buy, which created identification issues; and 2) that his conviction rests largely on Bagley's testimony, a witness who had questionable motives.

{¶34} However, even though the video of the controlled buy did not provide visual identification of Altman, there is other evidence which supports the conviction. Although the police did not always maintain sight of Bagley during the controlled purchase, there was an audio feed through which officers were able to hear and monitor the transaction, and Downard recognized Altman's distinctive voice. The transaction took place in Altman's home, and Bagley testified that Altman sold him Suboxone.

{¶35} Regarding Bagley's credibility, in *State v. Hilton*, 9th Dist. No. 09CA0036, 2010-Ohio-1923, the Ninth District addressed a credibility issue involving a confidential

informant with a prior conviction who participated in a controlled buy for compensation, and held this was not grounds to reverse a conviction based upon a manifest weight challenge. *Id.* at ¶22.

**{¶36}** In *Hilton*, the confidential informant was paid $100 for each successful purchase of crack cocaine and had been convicted of aggravated drug trafficking and theft in the past. *Id.* at ¶19. Moreover, during some of the transactions, the only visual evidence available was the testimony of the informant that purchased drugs, as the police were unable to get visual identification of the suspect due to darkness. *Id.* at ¶18.

**{¶37}** The use of paid confidential informants and lack of visual identification here are identical to *Hilton*. Further, Bagley's testimony is corroborated by the audio recording of the transaction and the testimony of police officers which provides context to the details surrounding the purchase. Altman's conviction is not against the manifest weight of the evidence, thus, his second assignment of error is meritless.

### Ineffective Assistance of Counsel

**{¶38}** In his final assignment of error, Altman asserts:

**{¶39}** "Defendant/Appellant's conviction must be reversed due to ineffective assistance of counsel."

**{¶40}** Altman argues counsel was ineffective for failing to object to testimony that Altman had served jail time in the past. In order to prove a claim of ineffective assistance of counsel, there must be a showing that counsel's performance fell below an objective standard of reasonableness, and, that the result of the trial would have been different, but for counsel's deficiencies. *Strickland v. Washington*, 466 U.S. 668, 687-688; 104 S.Ct. 2052, 2064-2065; 80 L. Ed. 2d 674, 693 (1984); *See also State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraph two of the syllabus.

**{¶41}** This court has held that counsel's decisions whether to raise an objection are matters of trial strategy, which are afforded deference on appeal. *State v. Robinson*, 7th Dist. No. 00 CA 190, 2002-Ohio-6734, ¶42. For example counsel may choose not to object in order to avoid bringing undue attention to a negative issue, such as the fact that Altman had been in jail. *See, e.g., State v. Chappell*, 8th Dist. No. 79589, 2002 WL

337726, *5 (Feb. 21, 2002) (counsel's failure to object to detective's testimony that victim had identified defendant from a "mug shot" was a legitimate trial strategy because it was possible "counsel felt that objecting to the one-time off-handed reference to a mug shot would bring undue attention to it and essentially 'point it out' to the jury.")

{¶42} More importantly, had counsel objected to the testimony of Bagley and Downard, it would have likely been overruled. As explained in the context of the first assignment of error above, the evidence was not being used to prove prior conduct; rather, to establish that Bagley knew Altman and that Downard recognized what Altman looked like. There was never any testimony as to what Altman was arrested for, how long he spent in jail, etc. Therefore, it is not evidence that is barred under Evid.R. 404(B).

{¶43} The prosecutor did comment during closing that Bagley was "doing some time" for a "drunk driving" offense, but did not mention why Altman had been jailed. Further, even if the disputed evidence had been excluded there is still more than sufficient evidence to sustain a conviction. Counsel was not constitutionally ineffective for failing to raise these objections, thus, Altman's third assignment of error is meritless.

{¶44} In sum, all of Altman's assignments of error are meritless. Use of prior act evidence was not plain error as the evidence was not offered to establish that Altman was acting in conformity with those acts. The decision of the trial court was not against the manifest weight of the evidence. Finally, defense counsel's failure to object to the prior act evidence or to comments by the prosecutor during closing does not render the representation constitutionally ineffective. Accordingly, the judgment of the trial court is affirmed.

Donofrio, J., concurs.
Waite, J., concurs.