[Cite as *State v. Griffin*, 2024-Ohio-4806.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-240039 |
| | | TRIAL NO. B-2303921 |
| Plaintiff-Appellee, | : | |
| vs. | : | *O P I N I O N.* |
| JOSHUA GRIFFIN, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Affirmed in Part, Reversed in Part, and Cause Remanded

Date of Judgment Entry on Appeal: October 4, 2024

*Melissa A. Powers*, Hamilton County Prosecuting Attorney, and *Sean M. Donovan*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Angela J. Glaser*, for Defendant-Appellant.

**KINSLEY, Judge.**

{¶1}    Defendant-appellant Joshua Griffin appeals the judgment of the Hamilton County Court of Common Pleas convicting him of felonious assault.  On appeal Griffin raises two assignment of error challenging both his conviction and the sentence imposed by the court.  After considering Griffin's arguments and reviewing the record, we affirm the trial court's judgment in part, reverse it in part, and remand the cause for further proceedings consistent with this opinion.

### *Factual and Procedural Background*

{¶2}    On August 17, 2023, Griffin was indicted on charges stemming from an August 11, 2023 fight at the Walgreens store in Corryville.  Griffin faced two counts of felonious assault, in violation of R.C. 2903.11(A)(1) and 2903.11(A)(2), both second-degree felonies.

{¶3}    Griffin's bench trial commenced on November 30, 2023.  At trial, the State called the complaining witness, the complaining witness's partner, and Cincinnati Police Officer Jeremy Chitwood.  Griffin testified in his own defense. Additionally, the State and Griffin jointly presented security camera footage from the date of the incident.

{¶4}    The complaining witness testified that, on the date of the incident, he and his partner had arrived at the Corryville Walgreens store to complete an errand. The partner went into the store, and the complaining witness remained in the car. As the partner walked up to the store, the complaining witness observed Griffin, who was near the entrance, grope the partner's groin.  The complaining witness testified he then got out of his car and attempted to confront Griffin. According to the complaining witness, he was unarmed at the time.  The complaining witness

recounted that, as he confronted Griffin, Griffin struck him in the face. As the confrontation continued, Griffin also punched him in the jaw. The complaining witness testified that, after Griffin punched him, he collected a bag that Griffin had been carrying and hid behind one of the Walgreens walls.

{¶5} The complaining witness further testified that, after letting a few moments pass, he circled the exterior of Walgreens and had a second confrontation with Griffin. The complaining witness explained that he threw the knapsack at Griffin, and Griffin then walked towards his bag and withdrew a black knife. The complaining witness testified that Griffin attempted to stab him numerous times before ultimately overpowering him. According to the complaining witness, at some point during the melee, Griffin cut his throat with a knife.

{¶6} Once police arrived, the complaining witness was taken to the hospital. The complaining witness stated that he received nine stitches for his neck wound, costing $1,286.10.

{¶7} The complaining witness's partner offered a similar version of events. The partner explained that as she got out of her car at Walgreens, she was groped by Griffin, a man whom she described was at best familiar to her from different jobs she had in the past. The partner testified that after Griffin groped her, she swatted his hand away and went into Walgreens. The partner further testified that, shortly after she went into the store, Griffin came in and asked her to come back outside to "get your dude before I kill your man."

{¶8} According to the partner, she left Walgreens with Griffin and the complaining witness then confronted him. The partner observed Griffin take down and mount the complaining witness. In an attempt to get Griffin off of the complaining witness, the partner recounted that she punched Griffin and hit him

with her keys, before ultimately using a razor blade she found in the parking lot to ward off Griffin.

{¶9} Chitwood, who arrived on the scene shortly after the affray, testified as to the state of the complaining witness's wounds. Chitwood opined that the complaining witness needed immediate medical attention. Chitwood further testified that police recovered the knife used by Griffin, as well as the razor blade used by the partner.

{¶10} Griffin offered a different version of events from the State's witnesses. Griffin stated that he knew the partner, suggesting that the two were at one point friends. Griffin contended that he had not groped the partner on her way into the Walgreens store, but rather that the partner playfully punched him, while he jovially grabbed the partner's arm. He further testified that the complaining witness approached him with a knife drawn, threatening that he would kill Griffin. Griffin relayed that, after his first confrontation with the complaining witness, he merely requested the partner to come outside to diffuse the situation.

{¶11} With regard to the second confrontation, Griffin alleged that the complaining witness reached for a knife in his pocket. Griffin testified that he therefore retrieved a knife from his bag to respond to the complaining witness's show of force. Griffin opined that he was only acting out of fear and that he only tackled the complaining witness to try and disarm him.

{¶12} Security footage offered into evidence captured much of the events that transpired. However, no footage revealed the exact interaction between the partner and Griffin, as the camera's field of vision was obstructed by one of the Walgreens exterior columns. Further, no footage clearly revealed that the complaining witness wielded a knife.

**{¶13}** The trial court found Griffin guilty of both counts. Despite Griffin's contention that he was acting in self-defense, the trial court found Griffin's argument unpersuasive. The trial court justified its holding by noting that nowhere in the video did the complaining witness clearly have a knife. Further the trial court held that Griffin's act of groping the partner was the original trigger for the brawl. The trial court stated that because Griffin's conduct started the chain of events that ultimately led to the stabbing, Griffin could not claim self-defense.

**{¶14}** On January 3, 2024, the trial court sentenced Griffin to a term of two to three years' incarceration. Count 2 was merged with Count 1 for sentencing purposes. At the sentencing hearing, the trial court did not mention any post-release control obligations Griffin would face. However, in its sentencing entry, the trial court imposed a post-release control term ranging from 18 months to three years.

**{¶15}** Griffin timely appealed.

### *Manifest Weight*

**{¶16}** In his first assignment of error, Griffin argues that his conviction was against the manifest weight of the evidence. More specifically, Griffin contends the manifest weight of the evidence established that he acted in self-defense.

**{¶17}** For self-defense claims, appellate courts conduct a manifest weight analysis to determine whether the State has met its burden of persuasion. *In re J.P.*, 2023-Ohio-4816, ¶ 25 (1st Dist.), citing *State v. Messenger*, 2022-Ohio-4562, ¶ 26.

**{¶18}** When reviewing whether a conviction is against the manifest weight of the evidence, we sit as the "thirteenth juror." *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997). "A verdict can be against the manifest weight of the evidence even though legally sufficient evidence supports it." *State v. Myers*, 2018-Ohio-1903, ¶

5

14. Distinct from a sufficiency review, for a manifest weight challenge we must "review the entire record, weigh the evidence, consider the credibility of the witnesses, and determine whether the trier of fact clearly lost its way and created a manifest miscarriage of justice." *State v. Powell*, 2020-Ohio-4283, ¶ 16 (1st Dist.).

{¶19} "When evidence is susceptible to more than one construction, a reviewing court must give it the interpretation that is consistent with the judgment." *State v. Jordan*, 2022-Ohio-2566, ¶ 58 (1st Dist.), quoting *In re J.C.*, 2019-Ohio-4027, ¶ 20 (1st Dist.). Reversal of the trial court's decision and granting of a new trial is a very limited remedy, that is only afforded in "the exceptional case in which the evidence weighs heavily against the conviction." *State v. Reynolds*, 2021-Ohio-963, ¶ 15.

{¶20} For an effective self-defense claim, a defendant must establish that: "(1) the defendant was not at fault in creating the situation that gave rise to the affray; (2) the defendant had a bona fide belief that she was in imminent danger of death or great bodily harm and that her only means of escape from such a danger was in the use of such force, and (3) the defendant did not violate any duty to retreat or avoid the danger." *State v. McDonald*, 2023-Ohio-1987, ¶ 17 (1st Dist.), quoting *State v. Wilson*, 2022-Ohio-3801, ¶ 10 (1st Dist.), quoting *State v. Smith*, 2020-Ohio-4976, ¶ 48 (1st Dist.). All three elements must be present; otherwise a defendant's self-defense claim fails. *State v. Smith*, 2020-Ohio-4976, ¶ 48 (1st Dist.), citing *State v. Cassano*, 96 Ohio St.3d 94, 107 (2002).

{¶21} Where evidence is presented that tends to support that a defendant acted in self-defense, the State bears the ultimate burden in proving beyond a reasonable doubt that the defendant's conduct was not in self-defense. *State v. Neal*,

2022-Ohio-1290, ¶ 18 (1st Dist.), citing *Smith* at ¶ 48. This obligation has been codified in R.C. 2901.05(B)(1), which provides that:

> A person is allowed to act in self-defense . . . . If, at the trial of a person who is accused of an offense that involved the person's use of force against another, there is evidence presented that tends to support that the accused person used the force in self-defense . . . , the prosecution must prove beyond a reasonable doubt that the accused person did not use the force in self-defense . . . .

{¶22} As applied here, Griffin's conviction for felonious assault was not against the manifest weight of the evidence, because the state disproved beyond a reasonable doubt the first element of a self-defense claim.

{¶23} The trial court considered competing versions of how the fight began—the complaining witness and the partner testified that Griffin groped the partner and that that was the precipitating event for the fight, whereas Griffin testified that he and the partner exchanged polite jokes and the complaining witness accosted him. The trial court determined the complaining witness's and partner's testimony to be the more credible, and as a result it found that Griffin instigated the fight by touching the partner in a sexually inappropriate way as she was entering the Walgreens store. The trial court also determined that Griffin acted as the aggressor by attacking the complaining witness with a knife.

{¶24} In arguing that the trial court's findings were against the manifest weight of the evidence, Griffin points to footage in the surveillance video showing the partner walking away from her encounter with Griffin. While their direct interaction is not visible due to the column, it is true that the partner can be seen walking into the store. Griffin alleges that the partner appears to be neither

emotional nor exaggerated in her body language and that this footage therefore undercuts her testimony and that of the complaining witness that Griffin groped her. But the trier of fact is free to accept or reject evidence offered by parties and make determinations regarding the witnesses' credibility. *State v. Grasper*, 2023-Ohio-1500, ¶ 75 (1st Dist.), citing *State v. Fether*, 2012-Ohio-892, ¶ 44 (5th Dist.); *State v. Carson*, 2019-Ohio-4550, ¶ 16 (1st Dist.) ("the trier of fact is in the best position to judge the credibility of the witnesses and the weight to be given to the evidence presented"). The trial court considered the credibility of the witnesses and determined the partner and complaining witness to be believable as to what occurred between Griffin and the partner. On the record before us, we cannot determine otherwise. *Id.*

**{¶25}** Our review of the record therefore shows that the trier of fact did not clearly lose its way in determining that the State disproved the first element of self-defense.

**{¶26}** Griffin also challenges the trial court's determination that he unreasonably escalated the level of force by using a knife, an element of deadly force, to confront what was otherwise at most a nondeadly fist fight. But the State need only disprove one element of self-defense to overcome a defendant's self-defense claim. *Messenger*, 2022-Ohio-4562, at ¶ 50. Because the trial court's finding that Griffin was at fault for the affray was not against the manifest weight of the evidence, the State disproved the first element of self-defense, and we need not consider Griffin's argument on the remaining elements.

**{¶27}** Therefore we overrule Griffin's first assignment of error.

### Sentencing

{¶28} In his second assignment of error, Griffin identifies two potential issues that occurred at sentencing. First, Griffin contends that the trial court failed to notify him of his post-release control obligations. Second, Griffin argues that the trial court failed to appropriately consider the felony sentencing factors.

### A. Post-Release Control Notifications

{¶29} Griffin first argues that the trial court erred when it failed to inform him of his post-release control obligations as mandated by R.C. 2929.19(B)(2)(f). The State concedes the error.

{¶30} R.C. 2929.19(B)(2)(f) requires trial courts to provide various post-release control notices to defendants, including if a period of supervision is imposed and the consequences for violating the terms of supervision, which may include a prison term. *Id.* These notifications must be made at both the sentencing hearing and in the trial court's judgment entry. *State v. Trone*, 2020-Ohio-384, ¶ 13 (8th Dist.).

{¶31} Griffin was sentenced to a term of incarceration of two to three years. However, at the sentencing hearing, the trial court failed to explain that, upon his release, he would under post-release control supervision for 18 months to three years as required by R.C. 2929.19(B)(2)(f). We therefore sustain this portion of Griffin's second assignment of error, reverse the post-release control portion of Griffin's sentence, and remand the cause to the trial court for the limited purpose of providing the required post-release control notifications under R.C. 2929.19(B)(2)(f).

### B. Sentencing Factors

**{¶32}** In his second argument, Griffin asserts that the trial court failed to make specific felony sentencing findings under R.C. 2929.11 and 2929.12 to justify its sentence of a two-to-three year prison term.

**{¶33}** In sentencing defendants convicted of felonies, trial courts are guided by the factors enumerated in R.C. 2929.11 and 2929.12. *State v. Cephas*, 2019-Ohio-52, ¶ 42 (1st Dist.). But trial courts are not required to make particular findings under these code sections. *Id.* And absent an affirmative showing to the contrary by a defendant, we presume a trial court considered these statutes before pronouncing its sentence. (Internal citations omitted.) *State v. Mullins*, 2024-Ohio-421, ¶ 7 (1st Dist.); *State v. Bedell*, 2018-Ohio-721, ¶ 29 (1st Dist.). Moreover, "[p]ursuant to R.C. 2953.08(G)(2), an appellate court may vacate or modify a felony sentence only if it clearly and convincingly finds that the record 'does not support the sentencing court's findings under [relevant statutes]' or 'the sentence is otherwise contrary to law.'" *Id.* at ¶ 4.

**{¶34}** Griffin does not argue that his sentence is contrary to law or that the record fails to support it. Rather, he attacks the lack of specific findings by the trial court to explain its sentence under R.C. 2929.11 and 2929.12. But Griffin failed to present any evidence that the trial court failed to consider the appropriate sentencing factors. Absent such evidence, we lack any basis for questioning the validity of the trial court's sentence. This portion of Griffin's second assignment of error is accordingly overruled.

### Conclusion

**{¶35}** We affirm the trial court's judgment of conviction because the trial court's finding that the State disproved that Griffin acted in self-defense was not

against the manifest weight of the evidence. But we sustain Griffin's second assignment of error insofar as the trial court failed notify him of his post-release control obligations. We therefore remand the matter to the trial court for the limited purpose of allowing the trial court to remedy the faulty post-release control notifications by holding a limited resentencing hearing. We overrule the remainder of Griffin's second assignment of error.

Judgment affirmed in part, reversed in part, and cause remanded.

**ZAYAS, P.J.,** and **BERGERON, J.,** concur.

Please note:
The court has recorded its own entry this date.