[Cite as *State v. Blevins*, 2026-Ohio-1181.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
LAWRENCE COUNTY

STATE OF OHIO,                     :

    Plaintiff-Appellee,          :     Case No.  24CA22

    v.                           :

JERRY RAY BLEVINS,                 :     DECISION AND JUDGMENT ENTRY

    Defendant-Appellant.         :

---

APPEARANCES:

Karyn Justice, Portsmouth, Ohio, for appellant.[1]

Brigham M. Anderson, Lawrence County Prosecuting Attorney, and Andrea M. Kratzenberg, Lawrence County Assistant Prosecuting Attorney, Ironton, Ohio, for appellee.

---

CRIMINAL APPEAL FROM COMMON PLEAS COURT
DATE JOURNALIZED:
ABELE, J.

{¶1} This is an appeal from a Lawrence County Common Pleas Court judgment of conviction and sentence.  Jerry Ray Blevins, defendant below and appellant herein, assigns the following errors for review:

FIRST ASSIGNMENT OF ERROR:

"MR. BLEVINS'S CONVICTIONS ARE NOT SUPPORTED BY THE MANIFEST WEIGHT OF SUFFICIENT EVIDENCE."

SECOND ASSIGNMENT OF ERROR:

---

[1] Different counsel represented appellant during the trial court proceedings.

> "THE TRIAL COURT ERRED WHEN IT FAILED TO
> ADVISE MR. BLEVINS REGARDING POST-RELEASE
> CONTROL AT SENTENCING."

{¶2} On June 21, 2024, a Lawrence County Grand Jury returned an indictment that charged appellant with one count of fourth-degree-felony aggravated trafficking in drugs and one count of second-degree-felony aggravated trafficking in drugs, both in violation of R.C. 2925.03(A)(1).

{¶3} On December 9, 2024, the trial court held a jury trial. At trial, a confidential informant testified about two controlled purchases of methamphetamine from appellant. During the first buy, he purchased about one gram of methamphetamine. During the second buy, the informant thought he purchased about half an ounce of methamphetamine, but when he opened the bag he discovered that it contained about 40 grams of methamphetamine.

{¶4} During the informant's testimony, the State played video recordings of the controlled buys. The informant identified appellant as the person who gave him the drugs. The video showed that, after the informant obtained the drugs, he immediately walked to a police car and gave the drugs to the police.

{¶5} The informant admitted that he had agreed to become an informant to help reduce criminal charges that he faced after officers discovered drugs in his possession. The informant stated that he currently was serving a prison sentence for a

tampering-with-evidence conviction and that he also had been imprisoned in the past for other criminal offenses, including "possession, tampering, vandalism and escape."

{¶6} Ironton Police Captain Brandon Blankenship testified and explained the procedure that he followed before the informant approached appellant's residence. He explained that, before the informant approached appellant's residence, officers searched the informant to ensure that he did not have any drugs on him. Blankenship also stated that, after the informant returned to the police vehicle after he visited appellant's residence, the informant had drugs in his possession.

{¶7} Blankenship further explained that officers used a cell phone to capture video and audio recordings of the two transactions. Blankenship stated that the first controlled purchase occurred during the nighttime, so Blakenship could not see appellant and the informant, except on the video recording. He indicated that because the second controlled buy occurred during the daytime, he viewed the transaction directly and via the recording.

{¶8} After Blankenship's testimony, the State presented evidence from two forensic scientists who tested the drugs. The forensic scientists confirmed that the substances they tested contained approximately .67 grams and 45 grams of methamphetamine. After their testimony, the State rested.

{¶9} At that juncture, appellant orally moved for a judgment of acquittal, that the trial court denied.

{¶10} After hearing the evidence the jury found appellant guilty of fourth-degree-felony and second-degree-felony aggravated trafficking in drugs.

{¶11} On December 12, 2024, the trial court sentenced appellant to serve 12 months in prison for the fourth-degree-felony offense and to serve 8 to 12 years for the second-degree-felony offense, with the sentences to be served consecutively to one another for a total prison time of 9 to 13 years. The court also imposed a period of postrelease control of no less than 18 months and no more than three years. This appeal followed.

I

{¶12} In his first assignment of error, appellant asserts that his convictions are against "the manifest weight of sufficient evidence." He argues that the informant's testimony was not credible and, thus, did not support appellant's convictions.

A

{¶13} We initially observe that appellant's assignment of error appears to blend the "quantitively and qualitatively different" standards that apply to sufficiency and manifest-weight challenges. *See State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997) ("The legal concepts of sufficiency of the evidence

and weight of the evidence are both quantitatively and qualitatively different."). A challenge to the manifest weight of the evidence requires a court to evaluate whether the greater amount of credible evidence offered at trial supports the defendant's conviction. *See id.* at 387, quoting *Black's Law Dictionary* 1594 (6th Ed.1990) ("Weight of the evidence concerns 'the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other.'"). A court that considers a manifest weight challenge must "'review the entire record, weigh the evidence and all reasonable inferences, and consider the credibility of witnesses.'" *State v. Beasley*, 2018-Ohio-493, ¶ 208, quoting *State v. McKelton*, 2016-Ohio-5735, ¶ 328. Reviewing courts also must bear in mind, however, that credibility generally is an issue for the trier of fact to resolve. *See Eastley v. Volkman*, 2012-Ohio-2179, ¶ 21; *State v. Issa*, 93 Ohio St.3d 49, 67 (2001); *State v. Murphy*, 2008-Ohio-1744, ¶ 31 (4th Dist.). "'Because the trier of fact sees and hears the witnesses and is particularly competent to decide "whether, and to what extent, to credit the testimony of particular witnesses," we must afford substantial deference to its determinations of credibility.'" *Barberton v. Jenney*, 2010-Ohio-2420, ¶ 20, quoting *State v. Konya*, 2006-Ohio-6312, ¶ 6 (2d Dist.), quoting *State v. Lawson*, 1997 WL 476684 (2d Dist. Aug. 22, 1997). As the *Eastley* court

explained:

> "'[I]n determining whether the judgment below is manifestly against the weight of the evidence, every reasonable intendment and every reasonable presumption must be made in favor of the judgment and the finding of facts. . . .
>      If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment.'"

2012-Ohio-2179, at ¶ 21, quoting *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80 (1984), fn.3, quoting 5 Ohio Jurisprudence 3d, Appellate Review, Section 60, at 191–192 (1978).  Thus, an appellate court will leave the issues of evidence weight and witness credibility to the fact finder, as long as a rational basis exists in the record for its decision. *State v. Picklesimer*, 2012-Ohio-1282, ¶ 24 (4th Dist.); *accord State v. Howard*, 2007-Ohio-6331, ¶ 6 (4th Dist.) ("We will not intercede as long as the trier of fact has some factual and rational basis for its determination of credibility and weight").

{¶14} Accordingly, a judgment of conviction is not against the manifest weight of the evidence when the record contains substantial credible evidence upon which the trier of fact reasonably could conclude, beyond a reasonable doubt, that the essential elements of the offense had been established.  *See State v. Leonard*, 2004-Ohio-6235, ¶ 81, quoting *State v. Getsy*,

84 Ohio St.3d 180, 193-194 (1998), citing *State v. Eley*, 56 Ohio St.2d 169 (1978), syllabus ("'The question to be answered when a manifest-weight issue is raised is whether "there is substantial evidence upon which a jury could reasonably conclude that all the elements have been proved beyond a reasonable doubt'" [emphasis omitted.]).  A court may reverse a judgment of conviction only if it appears that the fact finder, when it resolved the conflicts in evidence, "'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *Thompkins*, 78 Ohio St.3d at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983); *accord State v. Brown*, 2025-Ohio-2804, ¶ 31.  A reviewing court should find a conviction against the manifest weight of the evidence only in the "'exceptional case in which the evidence weighs heavily against the conviction.'"  *Thompkins*, 78 Ohio St.3d at 387, quoting *Martin*, 20 Ohio App.3d at 175; *accord State v. Clinton*, 2017-Ohio-9423, ¶ 166; *State v. Lindsey*, 87 Ohio St.3d 479, 483 (2000).

{¶15} On the other hand, a challenge to the sufficiency of the evidence does not permit a reviewing court to assess the credibility of the evidence.  *See State v. Brown*, 2025-Ohio-2804, ¶ 17, quoting *State v. Pountney*, 2018-Ohio-22, ¶ 19, quoting *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two

of the syllabus, *superseded by state constitutional amendment on other grounds as stated in State v. Smith*, 80 Ohio St.3d 89, 102, fn. 4 (1997) (sufficiency review does not allow a reviewing court to "ask whether the evidence should be believed but, rather, whether the evidence, '"if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt"'"); *see generally State v. Balmert*, 2025-Ohio-5588, ¶ 10, quoting *State v. Groce*, 2020-Ohio-6671, ¶ 7 (a sufficiency challenge requires a reviewing court to determine "'whether the evidence presented, when viewed in a light most favorable to the prosecution, would allow any rational trier of fact to find the essential elements of the crime beyond a reasonable doubt'"). Instead, the question is whether the State's evidence, if believed, is legally sufficient to support a defendant's conviction.  See *Thompkins*, 78 Ohio St.3d at 386 ("sufficiency is a test of adequacy").

{¶16} In the case sub judice, appellant's assignment of error challenges the credibility of the informant's testimony, not the sufficiency of the State's evidence.  Thus, because appellant's brief does not contain a sufficiency argument, we do not address this issue.  *See, e.g., State v. Quarterman*, 2014-Ohio-4034, ¶ 19 ("[a]ppellate courts are not obligated to create, nor should they sua sponte provide, arguments on behalf of parties").

{¶17} In the case sub judice, as we explain below, we do not believe that appellant's case is an exceptional case in which the evidence weighs heavily against his conviction.  Instead, we believe that the record contains substantial, credible evidence upon which the trier of fact reasonably could have concluded, beyond a reasonable doubt, that the essential elements of the offense had been established.  Thus, appellant's conviction is not against the manifest weight of the evidence.

B

{¶18} A conviction for aggravated trafficking in methamphetamine requires the State to establish, beyond a reasonable doubt, that a defendant knowingly sold, or offered to sell, methamphetamine.  *See* R.C. 2925.03(A)(1) and (C)(1).  In the case sub judice, appellant disputes whether the informant's testimony was sufficiently credible so as to establish, beyond a reasonable doubt, the elements of the offense.

{¶19} As this court recently recognized, "a confidential informant's testimony and credibility are generally matters for the trier of fact to weigh and determine, and the trier of fact is free to accept or reject any and all of the evidence." (Citations omitted.)  *State v. Burns*, 2025-Ohio-5442, ¶ 20 (4th Dist.).  Because *Burns* is particularly relevant to the issue appellant raises in his first assignment of error,  we quote it at length:

In *State v. Anderson*, 2018-Ohio-2013 (4th Dist.), this court considered whether Anderson's charges were against the manifest weight of the evidence when Anderson asserted that a confidential informant with a criminal history, financial incentive, and incentive to mitigate punishment for his own drug offense, lacked credibility. We observed:

> [T]his court and others generally have rejected manifest-weight challenges based upon a confidential informant's alleged lack of credibility. *State v. Stevens*, 4th Dist. Highland No. 09CA3, 2009-Ohio-6143, 2009 WL 4021149, ¶ 25; *accord State v. Bachman*, 6th Dist. Fulton No. F-17-006, 2018-Ohio-1242, 2018 WL 1567641; *State v. Bradley*, 2015-Ohio-5421, 55 N.E.3d 580 (8th Dist.), ¶¶ 26-28; *State v. Fisher*, 3rd Dist. Hardin No. 6-13-03, 2014-Ohio-436, 2014 WL 538642, ¶¶ 10-11; *State v. Altman*, 7th Dist. Columbiana No. 12 CO 42, 2013-Ohio-5883, 2013 WL 6921497, ¶¶ 33-37; *State v. Price*, 3rd Dist. Logan No. 8-13-03, 2013-Ohio-3984, 2013 WL 5230326, ¶ 24; *State v. Smith*, 193 Ohio App.3d 201, 2011-Ohio-997, 951 N.E.2d 469 (3rd Dist.), ¶ 20; *State v. Moore*, 5th Dist. Stark No. 2008-CA-00228, 2009-Ohio-4958, 2009 WL 3003996, ¶ 23. In *Bachman*, for instance, the court concluded that the defendant's trafficking charge was not against manifest weight of the evidence, even though the defendant asserted that the confidential informant's testimony lacked credibility due to the informant's "drug addiction and previous bad acts." *Id.* at ¶ 18. The court pointed out that the defendant's "trial counsel thoroughly explored the various credibility issues relating to" the confidential informant. The court noted that the jury was aware of the informant's credibility issues and was entitled to weigh it accordingly. The court did not believe "that the jury's credibility determination was against the manifest weight of the evidence." *Id.*, citing *State v. Neal*, 5th Dist. Stark No. 1998CA00288, 1999 WL 744148, *2-3, 1999 Ohio App. LEXIS 2863, *5-6 (June 21, 1999) (rejecting defendant's manifest weight argument challenging the credibility of identification testimony based upon the witness's credibility upon a determination that defense counsel thoroughly cross-examined the witness and

explored the credibility issue at trial).

*Id.* at ¶ 41.

In *Anderson,* we observed that, in *Bachman, supra,* the court also observed that the officers who monitored the informant's controlled buy with the defendant substantiated the informant's testimony. "The officers testified at length as to the procedures they employ to ensure that [the informant] was not in possession of any drugs prior to the transaction, which included searching [the informant] and his vehicle." *Id.* at ¶ 19. Further, in *Bachman* and in the case sub judice, after the informant's contact with the defendant, the officers rendezvoused with the informant who advised the officers that the defendant sold him narcotics and gave the officers the narcotics. *Anderson* at ¶ 42.

Moreover, other Ohio courts have rejected similar manifest-weight challenges based upon a confidential informant's alleged lack of credibility. In *State v. Jefferson,* 2021-Ohio-281, (3d Dist.), the defendant argued that the confidential informant not a credible witness because he testified in exchange for case consideration and had a motive to ensure defendant's conviction. The court, however, held:

> "[T]he jury is not precluded from relying on a witness's testimony simply because the witness has a criminal history or a motivation to provide testimony favorable to the prosecution." *State v. Smith*, 3d Dist. Seneca No. 13-19-26, 2020-Ohio-427, ¶ 44, citing *State v. Nitsche*, 8th Dist. Cuyahoga No. 103174, 2016-Ohio-3170, ¶ 44. "Instead, a witness's criminal history, prior drug use, or potential bias are factors that the jury may consider in determining whether to credit the witness's testimony and in assigning weight to the witness's testimony." *Id.*, citing *State v. Price*, 3d Dist. Logan No. 8-13-03, 2013-Ohio-3984, ¶ 23-24. Here, the jury was informed of the agreement between the confidential informant and law enforcement officers, specifically that he assisted law enforcement in his capacity as a confidential informant in exchange for case consideration for his pending drug-related charges. *See State v. Kammeyer*, 3d Dist. Seneca No. 13-19-48, 2020-Ohio-3842, ¶ 51. Accordingly, we cannot conclude that the jury clearly lost its way and created a manifest

injustice by finding the confidential informant's testimony credible. *See State v. Cartlidge*, 3d Dist. Seneca No. 13-19-44, 2020-Ohio-3615, ¶ 26 ("In the end, a '[m]ere disagreement over the credibility of witnesses is not a sufficient reason to reverse a judgment on manifest weight grounds.'"), quoting *State v. Cervantes*, 10th Dist. Franklin No. 18AP-505, 2019-Ohio-1373, ¶ 28.

*Jefferson* at ¶ 36.

In the case sub judice, appellant's trial counsel thoroughly cross-examined co-defendant Fender and confidential informant Gibson about their criminal records and incentives to testify. The jury heard testimony that Fender awaited sentencing in her case and that Gibson received compensation and an opportunity to avoid criminal charges. *See Anderson* at ¶ 43 (jury heard ample testimony about the confidential informant's criminal history and did not lose its way when it credited the informant's testimony and rejected the defendant's testimony). Here, the jury sitting as the trier of fact was "free to believe or disbelieve any or all of the testimony the confidential informant "presented" at trial. *State v. Crump*, 2010-Ohio-5263, ¶ 26 (10th Dist.).

. . . .

Importantly, in the case at bar appellee played a video recording of the transaction for the jury that showed during the controlled buy appellant retrieve the scales and handle the methamphetamine in coordination with codefendant Fender. Although appellant contends that the video does not show what exactly appellant handed to Fender, in *Anderson*, *supra,* 2018-Ohio-2013, we noted that while we recognized that none of the video or audio evidence crystallized the moment the defendant handed drugs to the confidential informant in exchange for money, the evidence did record the informant and the defendant engaged in conversations that trained law enforcement officers testified constituted drug transactions. *Id.* at ¶ 45. Moreover, we noted that direct evidence of a hand-to-hand drug transaction is not necessarily required to sustain a drug-trafficking conviction. *Id.*, citing *State v. Chafin*, 2017-Ohio-7622, ¶ 36-38 (4th Dist.) (rejecting similar argument that drug-trafficking conviction against manifest weight of the evidence when video failed to document hand-to-hand drug transaction); *State v. McLemore*, 2000 WL

422368, *2 (9th Dist.) (defendant's conviction not against the manifest weight of the evidence even though officers who observed controlled buy did not see what transpired between appellant and informant, and even though defendant asserted that informant lacked credibility because she cooperated with police in exchange for the dismissal of criminal charges against her).

As noted above, in the case sub judice, the co-defendant and confidential informant's testimony are substantially consistent and two officers corroborated their testimony and provided photos and the video surveillance. Therefore, like *Anderson*, even if none of the video or documentary evidence clearly shows that appellant exchanged drugs for money, Gibson and Fender's testimony, along with the officer's corroborating observations, provides ample competent credible evidence to establish beyond a reasonable doubt, that appellant committed the offense aggravated drug trafficking. *Anderson* at ¶ 45.

*Burns*, 2025-Ohio-5442, at ¶ 21-24 and 27-28 (4th Dist.).

**{¶20}** We believe that our reasoning set forth in *Burns* applies here to appellant's argument.  Appellant's argument is based upon his assertion that the informant was not a credible witness due to his previous criminal history and his incentive to assist the State to secure a conviction so that he would obtain leniency with respect to his own criminal charges.  As we explained in *Burns*, however, the credibility of an informant's testimony is a matter reserved to the fact finder.

**{¶21}** Furthermore, even if the video recording did not fully "crystallize[] the moment [appellant] handed drugs to the confidential informant in exchange for money," *Burns* at ¶ 27, the record contains competent and credible evidence to support

appellant's conviction for trafficking in drugs.  The officer testified that, before the informant approached appellant's residence, officers had searched the informant to ensure that he did not have any drugs in his possession before the controlled buy.  The recording shows that, after the controlled buy, the informant returned directly to the law enforcement officer and gave the drugs to the officer.  Nothing on the video or audio portion of the recording suggests that the informant had the opportunity to surreptitiously obtain drugs from any person other than appellant.  Thus, a logical inference is that the informant obtained the drugs from appellant.

{¶22} We also observe that appellant's trial counsel fully cross-examined the informant regarding his previous involvement with the justice system and questioned his motives. Additionally, during closing argument, trial counsel suggested that the jury should not believe the informant's testimony. Thus, the jury had ample opportunity to weigh the competing evidence and apparently decided that the State's evidence was more convincing.  *See State v. Smith*, 2020-Ohio-5316, ¶ 45 (4th Dist.) (conviction was not against the manifest weight of the evidence when the officer's testimony about the controlled buy, the existence of audio/video recordings, and the recovery of heroin and methamphetamine after the controlled buys corroborated the informant's testimony); *State v. McIntosh,*

2018-Ohio-5343, ¶ 53 (4th Dist.) ("Obviously, the jury was in the best position to weigh the informant's circumstances when it evaluated the informant's credibility, and we should not second-guess its decision. Even though appellant may believe that the informant is not a credible witness, the jury was free to believe otherwise."). Consequently, based upon our review of the record we do not believe that the jury verdict constitutes a manifest miscarriage of justice.

{¶23} Accordingly, based upon the foregoing reasons, we overrule appellant's first assignment of error.

                                   II

{¶24} In his second assignment of error, appellant asserts that his sentence is contrary to law because, during the sentencing hearing, the trial court failed to advise him that postrelease control "was discretionary and that a violation of [postrelease control] would subject him to the consequences set forth in R.C. 2967.28." Appellant asserts that although the trial court included appropriate language in its sentencing entry, the statute however required the court to provide these notices on the record during the sentencing hearing.

{¶25} The State agrees that, at the sentencing hearing, the trial court did not advise appellant of the sanctions that the parole board could impose if he violates any terms of his postrelease control. The State thus agrees that this court

should remand the matter to the trial court for the sole purpose
of giving appellant the proper postrelease-control
notifications.

{¶26} When reviewing felony sentences, appellate courts
apply the standard set forth in R.C. 2953.08(G)(2). *E.g., State
v. Jones*, 2024-Ohio-1083, ¶ 13; *State v. Grashel*, 2025-Ohio-580,
¶ 19 (4th Dist.). The statute authorizes appellate courts to
"increase, reduce, or otherwise modify a sentence" "if it
clearly and convincingly finds either of the following":

> (a) That the record does not support the sentencing
> court's findings under division (B) or (D) of section
> 2929.13, division (B)(2)(e) or (C)(4) of section
> 2929.14, or division (I) of section 2929.20 of the
> Revised Code, whichever, if any, is relevant;
> (b) That the sentence is otherwise contrary to law.

R.C. 2953.08(G)(2).

{¶27} As relevant here, a trial court that imposes a period
of postrelease control must give the defendant specific
advisements before it imposes sentence. To validly impose
postrelease control, a trial court must orally inform the
defendant of "[1] the term of supervision, [2] whether
postrelease control is discretionary or mandatory, and [3] the
consequences of violating postrelease control." *State v. Bates*,
2022-Ohio-475, ¶ 11, citing *State v. Grimes*, 2017-Ohio-2927, ¶
11, *overruled on other grounds by State v. Harper*, 2020-Ohio-
2913, *see State v. Jordan*, 2004-Ohio-6085, ¶ 22-23, overruled on

other grounds by Harper.

{¶28} R.C. 2967.28(B) and (C) specify the terms of

supervision and state that

> a period of post-release control required by this
> division for an offender shall be of one of the following
> periods:
>      (1) For a felony sex offense, five years;
>      (2) For a felony of the first degree that is not a
> felony sex offense, up to five years, but not less than
> two years;
>      (3) For a felony of the second degree that is not
> a felony sex offense, up to three years, but not less
> than eighteen months;
>      (4) For a felony of the third degree that is an
> offense of violence and is not a felony sex offense, up
> to three years, but not less than one year.
>      (C) Any sentence to a prison term for a felony of
> the third, fourth, or fifth degree that is not subject
> to division (B)(1) or (4) of this section shall include
> a requirement that the offender be subject to a period
> of post-release control of up to two years after the
> offender's release from imprisonment, if the parole
> board, in accordance with division (D) of this section,
> determines that a period of post-release control is
> necessary for that offender.

{¶29} R.C. 2929.19(B)(2)(d) and (e) require a trial court to

notify a defendant whether postrelease control is mandatory or

discretionary. *See Grimes* at ¶ 11. Postrelease control is

mandatory "if the offender is being sentenced, other than to a

sentence of life imprisonment, for a felony of the first degree

or second degree, for a felony sex offense, or for a felony of

the third degree that is an offense of violence and is not a

felony sex offense." R.C. 2929.19(B)(2)(d). Postrelease

control is discretionary if the court is sentencing the offender

"for a felony of the third, fourth, or fifth degree that is not subject to [R.C. 2929.19(B)(2)(d)]."   R.C. 2929.19(B)(2)(e).

{¶30} Additionally, R.C. 2929.19(B)(2)(f) requires a trial court to notify a defendant of the consequence of violating postrelease control.  This provision requires the trial court to notify a defendant that, if the defendant violates a condition of postrelease control,

> the parole board may impose a prison term, as part of the sentence, of up to one-half of the definite prison term originally imposed upon the offender as the offender's stated prison term or up to one-half of the minimum prison term originally imposed upon the offender as part of the offender's stated non-life felony indefinite prison term.

{¶31} A sentence that imposes postrelease control without providing the defendant with these statutory notifications at the sentencing hearing renders the postrelease-control portion of the sentence contrary to law.  *See Jordan*, 2004-Ohio-6085, at ¶ 23.

{¶32} In addition to orally informing a defendant of (1) the term of postrelease control, (2) the discretionary or mandatory nature of postrelease control, and (3) the consequences of violating postrelease control, the trial court also must incorporate these notifications into its sentencing entry. *Bates*, 2022-Ohio-475, at ¶ 12.  A sentence that imposes postrelease control is contrary to law if the trial court fails to provide these notices at the sentencing hearing or in the

sentencing entry.  *Id.*

{¶33} In the case sub judice, at the sentencing hearing the trial court informed appellant of the term of postrelease control.  The court stated that it sentenced appellant to a period of postrelease control of "up to three years, but not less than 18 months."  The trial court did not, however, orally notify appellant (1) whether this period of postrelease control was discretionary or mandatory, or (2) the consequences of violating postrelease control.  Although the trial court incorporated these two notifications into its sentencing entry,[2] the trial court also was required to advise appellant these notifications at the sentencing hearing.  *See Bates*, 2022-Ohio-475, at ¶ 12.  The court's failure to do so means that the trial court did not properly impose postrelease control, and the postrelease control portion of appellant's sentence is contrary to law.  *See Jordan*, 2004-Ohio-6085, at ¶ 23; *State v. Griffin*, 2024-Ohio-4806, ¶ 31 (1st Dist.); *State v. Bolan*, 2024-Ohio-2640, ¶ 11-12 (8th Dist.).

{¶34} Accordingly, based upon the foregoing reasons, we

---

[2] The State claims that the trial court's sentencing entry informs appellant that his period of postrelease control is mandatory.  Our review of the trial court's sentencing entry indicates that the court used the word "discretionary" to describe appellant's period of postrelease control.  *See* December 30, 2024 Nunc Pro Tunc entry ("the defendant is advised that upon the completion of the prison term, the defendant could be subject to a discretionary period of supervision . . . .").  Because we are reversing and remanding the postrelease-control portion of the trial court's sentence, the trial court may clarify any discrepancy on remand.

sustain appellant's second assignment of error, reverse the postrelease-control portion of appellant's sentence and remand this matter to the trial court for resentencing on postrelease control only.  We otherwise affirm the trial court's judgment.

                              JUDGMENT AFFIRMED IN PART,
                              REVERSED IN PART AND REMANDED FOR
                              FURTHER PROCEEDINGS CONSISTENT
                              WITH THIS OPINION.

JUDGMENT ENTRY

It is ordered that the judgment be affirmed in part, reversed in part and remanded for further proceedings consistent with this opinion.  Appellee and appellant shall equally share the costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Lawrence County Court of Common Pleas to carry this judgment into execution.

If a stay of execution of sentence and release upon bail has been previously granted by the trial court or this court, it is temporarily continued for a period not to exceed 60 days upon the bail previously posted.  The purpose of a continued stay is to allow appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of the proceedings in that court.  If a stay is continued by this entry, it will terminate at the earlier of the expiration of the 60-day period, or the failure of the appellant to file a notice of appeal with the Supreme Court of Ohio in the 45-day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio.  Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of 60 days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Smith, P.J. & Wilkin, J.: Concur in Judgment & Opinion

For the Court

BY:_____
    Peter B. Abele, Judge

NOTICE TO COUNSEL
Pursuant to Local Rule No. 22, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk